**Reuben R. BLOUNT, Plaintiff,**

v.

**WAKE ELECTRIC MEMBERSHIP CORPORATION and Stewart Champion, Defendants.**

**No. 92–806–CIV–5–D.**

United States District Court, E.D. North Carolina, Raleigh Division.

Sept. 23, 1993.

---

Kenneth R. Wooten, Ward & Smith, New Bern, NC, for plaintiff.

Cynthia M. Currin, Crisp, Davis, Page, Currin & Nichols, Gary S. Parsons, Patricia

P. Kerner, Bailey & Dixon, Raleigh, NC, for defendants.

## ORDER

DENSON, United States Magistrate Judge.

THIS CAUSE comes before the court on Plaintiff's motion to compel answers to interrogatories and production of certain materials and defendants' motion for physical and mental examination.

## I. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Since the filing of Plaintiff's motion to compel discovery, Defendants have supplemented their initial responses, thereby addressing many of the issues contained in Plaintiff's motion. As a result, three issues remain in contention and require ruling by this court.

### A. SURVEILLANCE VIDEOS, PHOTOS, ETC.

■ Plaintiff's Request for Production of Documents Number Four states: "Produce a copy of any surveillance movies, photos, notes, tape recordings, etc. of Plaintiff." In support of this motion, Plaintiff argues that these kind of materials are generally discoverable.

Defendants, in opposition to the motion, argue that any surveillance materials in Defendants' possession were prepared in anticipation of litigation and thus are protected from discovery under Federal Rule of Civil Procedure 26(b)(3), unless Plaintiff makes a showing of substantial need. Defendants add that if they decide to use these materials at trial, they would not have to disclose them to Plaintiff until the pretrial conference, pursuant to Federal Rule of Civil Procedure 16(c), thereby protecting the impeachment value of the evidence.

The purposes of Rule 26 are to eliminate secrets and surprises at trial, clarify and delineate the issues, and facilitate equitable settlements. 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2001 (1970). In order to achieve these goals, the discovery rules must be construed liberally. *Id.* Disclosure of any surveillance films or videotapes in this case will allow Plaintiff to review the materials for authenticity and properly prepare for trial, as well as promote settlement of the case. *See Martin v. Long Island Railroad Co.*, 63 F.R.D. 53, 54–55 (E.D.N.Y.1974); *Daniels v. National Railroad Passenger Corporation*, 110 F.R.D. 160, 161 (S.D.N.Y.1986). In fact, most courts which have explored the discoverability of surveillance films and the like have required disclosure of all such materials well in advance of trial. *See Martin*, 63 F.R.D. at 54 (listing opinions which approve of pretrial disclosure). Since Plaintiff's past activities can no longer be filmed, Defendant's claim of work product is defeated. See Fed.R.Civ.P. 26(b)(3) ("showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means."); *Martin*, 63 F.R.D. at 55.

■ However, the timing of the disclosure must be such that the impeachment value of the evidence is preserved. Therefore, before the disclosure, Defendant must be furnished with the opportunity to depose Plaintiff, so that the prior recording of the sworn testimony will discourage Plaintiff from altering his testimony in light of what the films or tapes reveal. *See* 8 C. Wright & A. Miller, Federal Practice & Procedure, § 3015. Accordingly, Defendant is ORDERED to disclose all surveillance materials in Defendant's possession to Plaintiff upon completion of Plaintiff's deposition as to his injuries and disabilities.

### B. DEFENDANT'S FINANCIAL INFORMATION

■ Plaintiff's Request for Production of Documents Number Six states: "Produce a certified copy of defendant Wake Electric's annual financial statements including profit and loss statements for the last five years." Plaintiff's Request for Production of Documents Number Seven states: "Produce a copy of any of defendant Wake Electric's tax returns filed with any government agency in the last five years." In support of these

requests, Plaintiff asserts that the financial condition of Defendant is a relevant and necessary factor to be considered in a punitive damages determination and is discoverable under North Carolina law.

Defendants, in opposition to the motion, argue that their financial records are not discoverable unless the trial court has determined that Plaintiff's evidence establishes a *prima facie* case for punitive damages. In support of this argument, Defendants cite *Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956). Defendant's reliance on this case is misplaced. The portion excerpted by Defendants clearly shows that this case deals with the admissibility rather than the discoverability of such evidence: "It should not be brought to the attention of *the jury* unless and until the trial judge determines that the evidence warrants the submission of such issue." *Hinson*, 244 N.C. at 29. Evidence does not have to be admissible at trial in order to be discoverable; it must only be "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

However, Defendants cite other cases which do support the proposition that a plaintiff must make some kind of factual showing that a viable claim for punitive damages exists before allowing discovery of financial worth. Defendants argue that Plaintiff has not made such a showing. In order to determine the sufficiency of Plaintiff's pleadings and evidence, Defendants have until October 24, 1993, the motion filing deadline, to file a motion to dismiss or a motion for summary judgment as to the punitive damages claim. If either motion is successful, Defendants would not be required to produce their financial records. However, if the motions are denied, Defendants are ORDERED to produce such documents within 20 days of the denial. If no motions are filed, Defendants are ORDERED to produce their financial information to the Plaintiff within 20 days of the motion filing deadline.

## C. PERSONNEL FILES OF DEFENDANT CHAMPION

■ Plaintiff's Request for Production of Documents Number Eighteen states: "Pro-

duce a copy of the personnel file on Stewart Champion." In support of this request, Plaintiff asserts that the file is not protected by any privilege and is necessary for the determination of many important issues, including Champion's training, experience, and work record.

Defendants, in opposition to the motion, argue that Champion's file is privileged, confidential, and not within the scope of discovery. In addition, Defendants assert that the file contains no information that would be relevant to this litigation, and, even if it did, such information can be obtained through depositions of Defendant Champion and his supervisor, without the need for disclosure of the personal information in the personnel file.

In support of their position, Defendants cite *New York Stock Exchange v. Sloan*, 22 F.R.Serv.2d 500 (S.D.N.Y.1976). In the *Sloan* case, the court held that an accounting firm's personnel files were not discoverable because an expectation of confidentiality existed and disclosure would discourage future candid evaluations of employees, making it difficult for the firm to maintain its standards and improve its performance. Defendants also refer to an order entered by Judge Britt in *United States Fire Ins. Co. v. Nationwide Mut. Ins. Co.*, 735 F.Supp. 1320 (E.D.N.C.) (1990) for a similar proposition.

■ It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns. However, there are also countervailing interests that must be considered. The scope of discovery must be broad in order to provide both sides with all the information necessary for proper and full litigation of all the relevant issues, as well as to eliminate surprise and to facilitate settlement. *Hickman v. Taylor*, 329 U.S. 495, 507–508, 67 S.Ct. 385, 391–92, 91 L.Ed. 451 (1947). The *Sloan* case cited by Defendants recognized that despite persuasive reasons for nondisclosure of personnel files, interests in broad discovery may require disclosure in many cases. Accordingly, the *Sloan* court held that even where strong public policy against disclosure exists, as in the case of personnel files, discovery is nev-

ertheless required if (1) the material sought is "clearly relevant," and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable. *Sloan*, 22 Fed.R.Serv.2d at 505 (citing *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482, 483–484 (S.D.N.Y.1964).

■ Plaintiff claims that negligence on the part of Defendant Champion, acting as an agent of Defendant Wake Electric, caused Plaintiff's injuries. In an action based upon negligent or otherwise improper performance of an employee's duties, the relevance requirement is generally satisfied by the fact that the personnel file and employee evaluations should indicate the training, experience, work record, and qualifications of the employee. *See Hawaii Corporation v. Crossley et al,* 88 F.R.D. 518, 522 (D.Haw.1980). Consequently, the Champion file may reveal that Defendant Wake failed to hire qualified employees, negligently delegated tasks to underqualified, untrained or inexperienced employees or did not adequately supervise employees. In addition, the file or employee evaluations may even contain descriptions of specific instances of negligence by this employee. Thus, the first prong of the *Sloan* test is satisfied.

Defendants assert, however, that even if the personnel file contains some relevant information, the depositions of both Defendant Champion and his supervisor, Phil Price, would provide all the information Plaintiff needs regarding Champion's training experience, work record and job suitability. This is not sufficient to defeat Plaintiff's claim of compelling need for the personnel files. The evaluations and other information in Champion's file were contemporaneous and made without litigation in mind. Thus, the personnel files possess an inherent reliability which cannot now be duplicated through any other source, especially through the depositions of Defendant Champion and his supervisor, both employees of Defendant Wake Electric.

ACCORDINGLY, Defendants are ORDERED to produce the personnel files of Defendant Stuart Champion.

## II. DEFENDANTS' MOTION FOR PHYSICAL AND MENTAL EXAMINATION

Defendants have moved for a physical and mental examination of Plaintiff pursuant to Fed.R.Civ.P. 35(a), which provides:

> When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

In support of this motion, Defendants argue that Plaintiff's physical and mental condition are "in controversy" and "good cause" exists to grant the motion for the examinations.

In opposition to the motion, Plaintiff claims that the Defendants have already had three independent examinations of Plaintiff and therefore there is no "good cause" for further neurological evaluation of Plaintiff. In addition, Plaintiff claims that the psychological condition of Plaintiff is not "in controversy." Plaintiff further claims that the motion is not timely and that the proposed examinations place undue hardship on Plaintiff. Since the discovery period has been extended, the timeliness claim will not be addressed.

### A. PHYSICAL EXAMINATION

■ Fed.R.Civ.P. 35(a) should be liberally construed in favor of granting discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114, 85 S.Ct. 234, 240, 13 L.Ed.2d 152. The party moving for a physical or mental examination must show that: (1) the condition which is the subject of the examination is in controversy, and (2) good cause exists for the granting of the motion. *Id.* at 116–117, 85 S.Ct. at 241–42. In certain contexts, the pleadings by themselves will be enough to satisfy these requirements. For example,

> [a] plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defen-

dant with good cause for an examination to determine the existence and extent of such asserted injury.

8 C. Wright & A. Miller, *Federal Practice & Procedure,* § 2234 (1970) (citing *Schlagenhauf, supra*).

■ The fact that Plaintiff has already been examined by other physicians does not defeat Defendants' claim of "good cause" for a physical examination by a neurologist. Plaintiff has previously been examined by a plastic surgeon, who evaluated Plaintiff's scarring and possible disfigurement, and a psychiatrist, who performed an incomplete neurological evaluation of Plaintiff. Plaintiff's other medical records indicate that a thorough, complete neurological evaluation was never performed. Since Plaintiff's neurological condition is very much at issue in this case, Defendants should be afforded an opportunity to further investigate the etiology of Plaintiff's condition and the precise extent of Plaintiff's neurological injuries.

■ However, Plaintiff claims that submitting to Defendants' examinations would constitute an "undue hardship." Plaintiff presently resides in Newport News, Virginia. Plaintiff has selected the Eastern District of North Carolina to bring his suit since the accident occurred here. Defendants have chosen, however, to have Plaintiff examined by physicians in Durham, which is in the Middle District of North Carolina. This is a four hour drive, each way, for Plaintiff. Plaintiff is wheel chair bound and has no transportation to get to Durham. Defendants claim that since Plaintiff's counsel will be in Raleigh on the dates of the examination, Plaintiff may accompany his counsel on those days, and this would eliminate any inconvenience to the parties. This is not very persuasive.

Generally, the movant is permitted to select the physician to conduct the examination, absent a finding of bias or prejudice. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2234 (1970). Fed.R.Civ.P. 35 gives the court broad discretion regarding the terms and conditions of the physical examination. *Id.* Nevertheless, most courts require the plaintiff to submit to an examination by a physician chosen by the defendant

if it is held in the venue where the plaintiff chose to file the action. *See Baird v. Quality Foods,* 47 F.R.D. 212, 213 (E.D.La.1969); 71 A.L.R.2d 973, 980.

In this case, however, Defendants have chosen a neurologist in Durham, North Carolina, which is not in the forum chosen by Plaintiff. In addition, it is a substantial distance from his home in Newport News, Virginia. It is difficult for the court to believe that there are no qualified neurologists in the Eastern District of Virginia, where Plaintiff resides, or in the Eastern District of North Carolina, where this action was brought. Defendants make no argument that the physician they have selected is uniquely qualified in some way. Nor do they give any other reason for the court to deviate from the general rule of allowing the examination in the forum chosen by the plaintiff.

In addition to the presumed availability of qualified examiners in close proximity to Plaintiff's residence or in this judicial district, the court should also take into account the physical condition of Plaintiff. *Steele v. True Temper Corporation,* 174 N.E.2d 298, 301 (Ohio 1961). Although the lengthy trip from his home to Durham, North Carolina, may not cause Plaintiff's physical condition to worsen, it certainly will be difficult for Plaintiff to manage. This is more than a matter of mere inconvenience. It is simply too much to ask Plaintiff to do under these circumstances.

Accordingly, Defendants will be permitted to select a qualified neurologist to conduct an examination of Plaintiff; however, this examination must take place either close to Plaintiff's residence, which is preferable, or in this judicial district. For now, the Defendants' motion for physical examination to be conducted in Durham, North Carolina is DENIED without prejudice.

### B. MENTAL EXAMINATION

■ Defendants also move for a mental examination of Plaintiff, pursuant to Fed. R.Civ.P. 35(a). In support of this motion, Defendants assert that Plaintiff has placed his mental state "in controversy" by seeking damages for both physical and emotional in-

juries, and by receiving treatment for emotional distress while hospitalized for his physical injuries. Therefore, the Defendants argue, a psychological examination of Plaintiff is highly relevant to the issues of damages and Plaintiff's duty to mitigate these damages.

Plaintiff, in response, asserts that his mental state is not "in controversy" in this case. Plaintiff points out that he was seen by the psychiatric department only a few times while hospitalized. This was due to "hostility secondary to seeing his life slip away," according to Dr. H.D. Peterson, the Director of the North Carolina Jaycee Burn Center. In addition, Plaintiff contends that a claim for emotional distress related to an injury as that experienced by Plaintiff does not place his mental condition "in controversy" within the meaning of Fed.R.Civ.P. 35.

The Federal Rules of Civil Procedure must be liberally construed to allow for extensive discovery. 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2001 (1970). Thus, if Plaintiff intends to seek compensation for emotional distress he has suffered, Defendants should have an opportunity to assess the exact extent of this mental injury. "[I]t is clear that where ... a plaintiff refers to specific mental and psychiatric injuries, the plaintiff is affirmatively placing in controversy a mental condition. Under those circumstances, it is appropriate for a court to order an examination." *Cody v. Marriott Corporation*, 103 F.R.D. 421, 423 (D.Mass.1984). If Plaintiff decides not to pursue damages for emotional distress, Plaintiff need not submit to a mental examination. Once Plaintiff makes a decision not to undergo the examination, however, he will be precluded by the court from seeking any relief for mental injuries.

Accordingly, if Plaintiff decides to pursue his claim for emotional distress, Plaintiff must submit to a mental examination by a qualified psychologist selected by Defendants. However, as with regard to the physical examination, Plaintiff will not be required to travel to Durham, North Carolina for such examination. Therefore, Defendants' motion for mental examination in Dur-

ham, North Carolina is DENIED without prejudice.

## CONCLUSION

In summary, Plaintiff's motion to compel production of all surveillance materials in Defendants' possession is ALLOWED, pending completion of Plaintiff's deposition.

Plaintiff's motion to compel production of Defendants' financial information is ALLOWED if Defendants are not successful in their motion to dismiss or for summary judgment as to the punitive damages claim.

Plaintiff's motion to compel production of Defendant Champion's personnel files is ALLOWED.

Defendants' motion for physical and mental examination is DENIED without prejudice until Defendants select physicians in the proper forum.