**Alexander CASON, Plaintiff,**

v.

**BUILDERS FIRSTSOURCE–
SOUTHEAST GROUP,
INC., Defendant.**

**No. 3:00CV341–H.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 30, 2001.

Geraldine Sumter, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, for plaintiff.

Paul A. Reichs, Anna E. Daly, Cozen & O'Connor, Charlotte, NC, for defendant.

### MEMORANDUM AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the Plaintiff's "Motion to Compel ..." (document # 16) and "Memorandum in Support ..." (document # 17), both filed August 3, 2001; and "Defendant's Memorandum in Opposition ..." (document # 20), filed August 16, 2001. Plaintiff's counsel has informed the Court that a reply brief will not be filed.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully reviewed the pleadings, record, arguments of counsel, and applicable authority, the Court will *grant in part* and *deny in part* Plaintiff's "Motion to Compel" (document # 16), as discussed below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This is an action seeking damages and equitable relief for racial discrimination under 42 U.S.C. § 1981 ("Section 1981"), as amended, and the common law and public policy of North Carolina.

The Defendant, Builders Firstsource–Southeast Group, Inc., a North Carolina corporation with its principal place of business in Marshville, Union County, North Carolina, sells and distributes building supplies.

In March, 1997, Defendant hired the Plaintiff, Alexander Cason, who is black, through a temporary employment agency, to work as a yardman. On May 12, 1997, Plaintiff's temporary position was made permanent as both a yardman and delivery driver.

The Plaintiff contends that during his employment with Defendant he was subjected to a racially hostile work environment, that is, racial epithets, comments, songs, and jokes; and that when Plaintiff complained, rather than take appropriate action, the Defendant retaliated against him. Specifically, Plaintiff alleges that one of Defendant's customers, who was on Plaintiff's delivery route, made racially derogatory comments to Plaintiff and displayed a large knife, but when Plaintiff complained to management and requested a different route, the Defendant did nothing; that in October, 1997, Defendant's Foreman Benson Carpenter called the Plaintiff to the rear of Defendant's warehouse and showed Plaintiff a noose, which was hanging from a beam, and made comments about lynching; that Plaintiff complained about this incident to Defendant's General Manager Christopher Keller, who took no action and seemed amused; and that in January, 1998, Mr. Keller made racially derogatory comments to Plaintiff.

Plaintiff further contends that when he complained to higher management, he was subjected to retaliation; that is, that he was singly given menial, heavy, and dirty jobs, which were normally performed in tandem by two men; that Defendant caused Plaintiff "problems" in seeking

medical treatment for an on-the-job injury; and that Defendant disciplined Plaintiff for acts that went unpunished when committed by white employees. Sometime thereafter, the Plaintiff quit his job.[1]

On July 13, 2000, the Plaintiff filed the instant action seeking damages and equitable relief for hostile work environment under Section 1981 and state law, as well as state law claims for intentional infliction of emotional distress, negligent retention and supervision, and constructive discharge.

On October 30, 2000, the Defendant filed an Answer stating, *inter alia,* affirmative defenses that Defendant conducted an investigation into Plaintiff's complaints and "took prompt, effective remedial action"; that the acts of Mr. Keller and Mr. Carpenter were outside the scope of their employment; and that Plaintiff failed to make a "reasonable report" to the Defendant.

On January 31, 2001, Plaintiff served his First Set of Interrogatories and Requests for Production of Documents.

On April 13, 2001, the undersigned entered an "Agreed Confidentiality and Protective Order" (document # 14), providing that either party may designate any document produced by them during discovery as CONFIDENTIAL—that is, not to be disclosed to anyone other than the parties or their counsel or used for purposes other than the instant proceeding.

On April 25, 2001, Defendant served its Response to Plaintiff's discovery, including a Privilege Log, which identifies 20 sets of documents and asserts a privilege or other objections to producing them, as follows:

1. Documents One through Six: Notes of Defendant's investigation into Plaintiff's complaints. Defendant objects on grounds that these notes are work product, that is, prepared in anticipation of litigation.

2. Documents Seven and Eight: Mr. Carpenter and Mr. Kelly's respective personnel files. Defendant objects on grounds that these files are "personal and confidential."

3. Documents Nine through Fifteen: Personnel files of seven of Defendant's other employees. Defendant objects on grounds that these files are "personal and confidential."

4. Documents Sixteen, Eighteen, and Nineteen: Defendant's copies of Notices of Charge of Discrimination (racial), filed with the Equal Employment Opportunity Commission ("EEOC") by another employee, and notes of Defendant's investigation. Defendant objects on grounds that these documents are confidential under 42 U.S.C. § 2000e–8 and, further, that they are not likely to lead to the discovery of admissible evidence.

5. Documents Seventeen and Twenty: Documents relating to the mediation and settlement of the above-noted EEOC charges. Defendant objects on grounds that these documents are confidential under 42 U.S.C. § 2000e–8 and, further, that they are not likely to lead to the discovery of admissible evidence.

On August 3, 2001, and following counsels' unsuccessful attempts, by letter and telephone conference, to resolve the parties' discovery dispute, the Plaintiff filed a "Motion to Compel ..." (document # 16) production of all documents listed in the

---

1. Neither the pleadings nor the parties' briefs provide any details about Defendant's alleged retaliation for or investigation of the Plaintiff's complaints, nor even the date he quit his job.

Privilege Log.[2] This motion has been briefed as set forth above and is now ripe for determination.

## II. DISCUSSION

### A. Discovery and Motions to Compel

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. *See Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *and Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. *See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 929 (4th Cir.1995) (denial of motions to compel reviewed on appeal for abuse of discretion); *Erdmann v. Preferred Research Inc.,* 852 F.2d 788, 792 (4th Cir.1988) (noting district court's substantial discretion in resolving motions to compel); *and LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir.1986) (same). However, regarding cases such as this, where work product doctrine is raised in objection to a discovery request, the Fourth Circuit has recently stated that "[w]e review the district court's decision that certain documents are subject to privilege *de novo,* since it involves a mixed question of law and fact." *Chaudhry v. Gallerizzo,* 174 F.3d 394, 402 (4th Cir.), *cert. denied,* 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999). *Accord In re Grand Jury Proceedings,* 33 F.3d 342, 353 (4th Cir.1994); *and Cincinnati Insurance Co. v. Zurich Insurance. Co.,* 198 F.R.D. 81, 84 (W.D.N.C.2000).

### B. Work Product Doctrine

■ The Defendant has timely objected to producing notes (Documents One through Six), which contemporaneously documented the Plaintiff's complaints and the Defendant's attempts to investigate and take remedial action—evidence clearly otherwise admissible to establish or refute either Plaintiff's claims or Defendant's affirmative defenses—on the grounds that the notes are protected by the work product doctrine.

■ As the Fourth Circuit described the work product doctrine most recently:

Under the work product rule, codified in Fed.R.Civ.P. 26(b)(3), an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation ... [a]n attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impres-

---

**2.** *See* Exhibit 1 to Plaintiff's Motion. These documents, or sets of documents, will be referred to, for the purposes of this motion, as they are numbered on the Privilege Log.

sions and opinions used against the client.

*Chaudhry*, 174 F.3d at 403 (internal citations omitted). *Accord United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("the work-product privilege is . . . designed to balance the needs of the adversary system: promotion of an attorney's preparation in representing a client versus society's general interest in revealing all true and material facts to the resolution of a dispute"); *Grand Jury*, 33 F.3d at 348; *In re Doe*, 662 F.2d 1073, 1077–80 (4th Cir.1981); *and Cincinnati*, 198 F.R.D. at 84.

■ The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper. *See, e.g., Nobles*, 422 U.S. at 236–39, 95 S.Ct. 2160; *and Taylor*, 329 U.S. at 510–11, 67 S.Ct. 385.

■ Furthermore, to qualify for protection under the work product doctrine, a lawyer must create the document in anticipation of litigation, that is, *"because* of the prospect of litigation." *National Union Fire Ins. v. Murray Sheet Metal*, 967 F.2d 980, 984 (4th Cir.1992) ("materials prepared in the ordinary course of business . . . or for other non-litigation purposes" are not protected). *Accord In re Grand Jury Proceedings*, 102 F.3d 748, 752 (4th Cir.1996) (internal report documenting bank's investigation of whether bank had committed a crime, which was prepared by non-lawyer bank employee, not subject to work product doctrine).

Although there is a dispute whether the investigations were conducted, and the notes written, in "anticipation of litigation," it is uncontroverted that these notes were prepared, not by an attorney, but by an unnamed member of Defendant's management staff. Further, Defendant has not alleged that it even consulted an attorney prior to investigating Plaintiff's charges or that the notes contain an attorney's opinions or even facts developed by an attorney. Consequently, these notes are not within the work product doctrine and are subject to discovery. Accordingly, the undersigned will *grant* Plaintiff's Motion to Compel as to Documents One through Six.

### C. *Production of Personnel Files*

#### 1. *Mr. Carpenter and Mr. Keller's Personnel Files*

■ Documents Seven and Eight are the respective personnel files of Defendant's Foreman and General Manager, whom Plaintiff alleges took an active role in harassing him and, further, in failing to take appropriate action when he complained. Defendant objects to production on grounds that personnel files are "personal and confidential" and that Mrs. Carpenter and Keller have not consented to their release.

■ Although not covered by a *per se* privilege, the undersigned notes that there is a strong public policy against the public disclosure of personnel files. *See Blount v. Wake Elec. Membership Corp.*, 162 F.R.D. 102, 105–06 (E.D.N.C.1993) ("It cannot be denied that personal privacy and accurate employee evaluations are important public policy concerns.") However, where the files sought are those of employees whose action or inaction has a direct bearing on the Plaintiff's claims or Defendant's affirmative defenses and especially where, as here, the court has issued an appropriate confidentiality order, personnel files are subject to discovery. *Accord Johnson v. Morris*, 903 F.2d 996, 998 (4th Cir.1990) (pursuant to a protective order, defendant's investigative file and the per-

sonnel files of all employees, who supplied information during the investigation, were produced.); *and Blount*, 162 F.R.D. at 105–06 (ordering production of personnel files of employees directly implicated by plaintiff because the files contained information which was "clearly relevant" and not otherwise readily available).

As to the personnel files of the two alleged harassers, who also were Plaintiff's superiors and undoubted participants in, at least, Defendant's initial investigation, the Plaintiff's right to conduct meaningful discovery outweighs the public policy against the general disclosure of personnel files. Therefore, the undersigned will *grant* Plaintiff's Motion to Compel as to Documents Seven and Eight.

### 2. *Personnel Files of Other Employees*

■ Documents Nine through Fifteen are the personnel files of other of Defendant's employees. Other than the employees' names, Plaintiff has stated nothing about them or what discoverable information might be in their personnel files, only alleging generally that examination of the subject files might reveal a difference in the manner in which Defendant disciplined Plaintiff versus white employees. However, Plaintiff has not pled or stated in his brief how he was disciplined or how he believes that discipline differed from that directed at other employees. Nor has the Plaintiff stated that any of these employees were witnesses to or participants in the alleged racial harassment. In the face of such a sparse showing and these employees' understandable refusal to consent to disclosure of their otherwise confidential personnel files, the public policy against

such production remains paramount. *Accord Blount*, 162 F.R.D. at 105–06.

Accordingly, the undersigned will *deny* the Plaintiff's Motion to Compel as to Documents Nine through Fifteen, without prejudice to Plaintiff's right to renew his motion should he be able to make a specific showing as to his need for one of these employee's files.

### D. *EEOC Charge Documents and Notes of Defendant's Investigation*

■ Documents Sixteen and Eighteen are the Defendant's copies of Notices of Charge of Discrimination (racial), filed with the EEOC by another employee, who also worked at Defendant's Marshville facility. Document Nineteen is the notes of Defendant's investigation of those charges. Defendant objects to production on the grounds that these documents are confidential under 42 U.S.C. § 2000e–8 and, further, that they are not likely to lead to the discovery of admissible evidence.

As the Plaintiff correctly points out, however, 42 U.S.C. § 2000e–8 applies only to documents in the possession of the EEOC and its personnel.[3] There is no similar provision for such documents retained by the employer, which are subject to discovery. *Accord Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537, 541 (E.D.N.C.1994) (defendant must produce both charge filed with any government agency as well as documentation of any action taken as a result of the charge).

Moreover, these complaints of racial discrimination, filed by a black employee who worked at the same warehouse as Plaintiff, and the notes of Defendant's investigation, may well lead to admissible evi-

---

**3.** 42 U.S.C. § 2000e–8 provides: "It shall be unlawful for any officer or employee of the Commission to make public in any manner

whatever the information obtained by the Commission...."

dence concerning a racially hostile work environment at that facility or Defendant's practice regarding investigating and remediating such conditions. Accordingly, Plaintiff's Motion to Compel production of Documents Sixteen, Eighteen, and Nineteen must and shall be *granted.*

### E. *Documents Regarding Mediation and Settlement of EEOC Charges*

 Finally, the Plaintiff seeks production of Documents Seventeen and Twenty which are the mediation and settlement documents of the above-noted EEOC charges. The Defendant's stated objection—42 U.S.C. § 2000e–8—is, again, misplaced.

The undersigned finds, however, that there are significant policy reasons for promoting fair, speedy, and confidential settlements of employment discrimination charges, as well as prompt and effective remediation of discriminatory work environments. Such results will be more difficult to attain if employers believe that such settlement agreements might be subject to disclosure to third parties.

These concerns outweigh Plaintiff's need for any information which might be contained in the settlement documents alone, as opposed to information also contained in the administrative charges and investigatory documents, which, as stated above, shall be produced. Therefore, Plaintiff's Motion to Compel production of Documents Seventeen and Twenty will be *denied.*

### III. *ORDER*

NOW THEREFORE, IT IS ORDERED:

1. Plaintiff's "Motion to Compel" (document # 16) is **GRANTED** as to items number One through Eight, Sixteen, Eighteen, and Nineteen; and **DENIED** *at this*

*time* as to the remaining items. The parties shall bear their own costs.

2. The Defendant shall serve the subject documents *on or before September 15, 2001.*

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.