# VIRGIN ISLANDS WATER AND POWER AUTHORITY, Petitioner
## v.
# PUBLIC SERVICES COMMISSION, Respondent

Civil No. 512/2001

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

September 24, 2002

SAMUEL H. HALL, ESQ., Birch, DeJohgh, Hindel & Hall, St. Thomas, United States Virgin Islands, *Attorneys for Petitioner*

CATHY M. SMITH, ESQ., Virgin Islands Water and Power Authority, St. Thomas, United States Virgin Islands, *Attorney for Petitioner*

FREDERICK G. WATTS, Watts & Benham, PC, St. Thomas, United States Virgin Islands, *Attorneys for Respondent*

SWAN, *Judge*

## MEMORANDUM OPINION

(September 24, 2002)

### I. PROCEDURAL HISTORY AND FACTS

THIS MATTER is before the Court on Petitioner Virgin Islands Water and Power Authority's ("WAPA") Petition of Appeal, seeking the disqualification of Ronald Russell, Esquire as hearing examiner for Respondent Public Services Commission ("Commission").[1]

On July 10, 2001, the Commission appointed Ronald Russell, Esquire ("Russell") as its hearing examiner. As hearing examiner, Russell's duties include conducting a rate investigation of WAPA, which involves conducting the necessary hearings and thereafter making recommendations to the Commission. On July 30, 2001 and pursuant to Title 30 V.I.C. § 33, WAPA petitioned the Commission to reconsider its order appointing Russell as hearing examiner, because Russell presently represents a client who is suing WAPA. WAPA's petition was deemed denied by the Commission, when it failed to respond to WAPA's application for reconsideration within thirty (30) days.[2]

On September 25, 2001, WAPA filed its notice of appeal with this Court objecting to Russell's appointment and asserting that in his capacity of hearing officer Russell has a conflict of interest. WAPA asserts that presently Russell is representing a client, Sylvia McKenzie, in the case of *Sylvia E. McKenzie v. Virgin Islands Telephone*

---

[1] The Commission was created by Title 3 V.I.C. § 273 and exists "within the Department of Public Works" and "is continued within the Department of Licensing and Consumer Affairs for budgetary purposes only."

[2] 30 V.I.C. § 33 in pertinent part states "Any public utility or any other person or corporation affected by any final order or decision of the Commission may, within thirty days after publication thereof, file with the Commission an application in writing requesting a reconsideration of the matters involved, and stating specifically the errors claimed as grounds for such reconsideration. ... The Commission, within thirty days after the filing of such application, shall either grant or deny it. Failure by the Commission to act upon such application within such period shall be deemed a denial thereof.

*Corporation d/b/a Vitelco and Virgin Islands Water and Power Authority d/b/a WAPA,* Civil No. 725/1996 Action for Damages. Additionally, WAPA asserts that the lawsuit in which Russell is co-counsel alleges *inter alia* negligence by WAPA and seeks compensatory and punitive damages for personal injury suffered by Sylvia McKenzie ("McKenzie"). WAPA further alleges that because of this pending lawsuit in which Russell is co-counsel, Russell cannot be an impartial hearing examiner. Moreover, by having access to WAPA's financial records and information, Russell will have an unfair advantage particularly during settlement negotiations in the McKenzie lawsuit. On October 15, 2001, the Commission filed its answer to WAPA's petition in addition to a motion to dismiss the appeal.

## II. DISCUSSION

### A. Jurisdiction

In order for this Court to address WAPA's appeal, there must be a "final order" or "decision" by the Commission. Title 30 V.I.C. § 34(a) states in pertinent part:

> The District Court of the United States Virgin Islands shall have jurisdiction to hear and determine any appeal from an order or decision of the Commission. Any public utility, or any other person or corporation affected by any final order or decision of the Commission, may, within sixty days after final action by the Commission upon the petition for reconsideration, file with the clerk of the District Court of the United States Virgin Islands, a petition of appeal setting forth the reasons for such appeal and the relief sought ...

In *Cec Energy Company, Incorporated v. Public Service Commission of the Virgin Islands,* 891 F.2d 1107 (3d Cir. 1989) the United States Third Circuit Court of Appeals addressed the finality requirement for the appealability of the Commission's orders. The Third Circuit Court stated that there are several factors to consider in determining whether an order or decision by the Commission is final. *Id.* at 1110. *See, e.g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967); *Federal Trade Commission v. Standard Oil Company of*

46

*California*, 449 U.S. 232, 66 L. Ed. 2d 416, 101 S. Ct. 488 (1980). The factors to be considered are:

> 1) whether the decision represents the agency's definitive position on the question; 2) whether the decision has the status of law with the expectation of immediate compliance; 3) whether the decision has immediate impact on the day-to-day operation of the party seeking review; 4) whether the decision involves a pure question of law that does not require further factual development; and 5) whether immediate judicial review would speed enforcement of the relevant act. *Id.* (citing *Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1080 (3d Cir. 1989).

■ Pursuant to Title 30 V.I.C. § 33, WAPA petitioned the Commission to reconsider its order appointing Russell as hearing examiner. The Commission refused to reconsider its decision. Therefore, the petition was deemed denied by the Commission, when it failed within thirty (30) days to respond to WAPA's application for reconsideration. Accordingly, the petition having been denied as a result of the Commission's failure to hear the petition, the denial became the Agency's definitive position on the issue. Accordingly, the Commission's decision to appoint Russell is its final decision on the matter, because there is no further need for factual or evidentiary consideration on the issue. Additionally, the Commission's decision on the appointment of Russell has the status of law with the expectation of immediate compliance, because the appointment of the hearing examiner is a prerequisite for commencing the rate investigation mandated by Act no. 6402 (April 9, 2001). Judicial review would speed enforcement of the relevant act, because Act no. 6402 calls for the Commission to conduct a rate investigation of WAPA. An integral part of the investigation is appointment of the hearing examiner by the Commission. It is important that once a challenge is made to the appointment of a particular hearing examiner that the issue of the challenge be resolved timely and expeditiously before the rate investigation commences. Considering the above, the Court finds that the July 10, 2001 order appointing Russell as hearing examiner, which was signed by Walter L. Challenger, Chairman of the Commission, is a final order or decision by the Commission.

## B. As hearing examiner Russell will have access to WAPA's confidential information which may be used by Russell in his pending civil suit against WAPA.

The Commission has been given the power by the Virgin Islands Legislature to conduct rate investigations of public utilities. Act No. 6402 provides that "commencing July 30, 2001, the Commission shall conduct rate investigations of all regulated utilities biennially and hold formal hearings. ..."[3] Additionally, pursuant to Title 30 V.I.C. § 18, the Commission has the authority to appoint agents or hearing examiners to conduct its rate investigations.[4]

Title 30 V.I.C. § 8 gives the Commission and Russell enormous access to WAPA's confidential information. It states in pertinent part:

Each public utility shall furnish to the Commission in such form and at such time as the Commission shall require, such accounts, reports, and information as shall show in itemized detail: Depreciation; salaries and wages; legal expenses; taxes and rentals; quantity and value of material used; receipts from residuals, by-products, services or other sales; total and net costs; net and gross profits; dividends and interest; surplus or reserve; prices paid by consumers; and in addition such other items, whether of a nature similar to those hereinbefore enumerated or otherwise, as the Commission may prescribe, in order to show completely and in detail the entire operation of the public utility in furnishing its product or service to the public.

---

[3] Governor Charles W. Turnbull subsequently signed Act No. 6402 also known as Bill No. 24-0060 into law on May 2, 2001.

[4] For the purpose of making any investigation with regard to any public utility the Commission shall have the power to appoint, by an order in writing, an agent whose duties shall be prescribed in such order. In the discharge of his duties such agent shall have every power whatsoever granted in this chapter to the Commission, except the power to issue any order for which a hearing is required, and said agent shall have power to administer oaths and take depositions ... The decision of the Commission shall be based upon its examination of all testimony and records. The recommendations made by such agents shall be advisory only, and shall not preclude the taking of further testimony, if the Commission so order, nor further investigation.

48

Similarly, Title 30 V.I.C. § 16 gives the Commission and Russell further access to WAPA's confidential information. It states in relevant part:

> The Commission or any member thereof or any person or persons employed by the Commission for that purpose shall, upon demand, have the right to inspect the books, accounts, papers, records, and memoranda of any public utility, and to examine, under oath, any officer, agent, or employee of such public utility in relation to its business and affairs. Any person other than one of said members who shall make such demand shall produce his authority to make such inspection or examination.

Russell, as hearing examiner for the Commission, will have access to an enormous amount of WAPA's confidential information, as detailed in 30 V.I.C. § 8 and § 16, including WAPA's "books, accounts, papers, records and memoranda", such as its confidential financial records. Significantly, Russell will have virtually all of the powers of the Commission. Title 30 V.I.C. § 18 states, "In the discharge of his duties such agent shall have every power whatsoever granted in this chapter to the Commission, except the power to issue any order for which a hearing is required, and said agent shall have power to administer oaths and take depositions."

It is noteworthy that the confidential information Russell can access as hearing examiner pursuant to Title 30 V.I.C. § 8 is not discoverable by Russell in the McKenzie civil suit. In that civil suit, Russell's discovery demands and requests would be limited to the provisions of FED. R. CIV. P. 26 through 36. However, as hearing examiner, Russell will have access to *inter alia* WAPA's financial records which are likewise not discoverable. In the McKenzie civil suit Russell's client is seeking *inter alia* punitive damages. In *City of Newport v. Fact Concerts, Incorporated*, 453 U.S. 247, 270, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1980), the United States Supreme Court held that "[e]vidence of a tort feasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded ... ." It has been judicially determined, however, that punitive damages cannot be awarded against a public utility. *Id.* at 259-63 (The United States Supreme Court established that punitive damages are generally not assessable against public or municipal corporations). The United States District Court for the District of the Virgin Islands, St. Croix Division in *Powell v. Virgin*

49

*Islands Water and Power Authority, et al.*, 20 V.I. 579, 582 (D.V.I. 1984) following the United States Supreme Court's holding in *City of Newport* held that punitive damages cannot be assessed against WAPA. The District Court stated, "we adopt this rule for our jurisdiction as logical and appropriate." *Id.* The District Court reasoned:

> [a]n award of punitive damages in such instances would ultimately be borne by the citizens of the affected community, either through increased taxes, or in the instance of WAPA, by higher rates for water and electricity. Yet such citizens are the very persons sought to be protected by punitive damage awards. *Id.* at 581-82.

A case in which the rule has been extended beyond public utilities to other independent governmental instrumentalities is found in *Codrington v. The Virgin Islands Port Authority, et al.*, 911 F. Supp. 907, 912-13, 33 V.I. 215, 33 V.I. 245 (D.V.I. 1996) (Absent express statutory authority, punitive damages cannot be awarded against The Virgin Islands Port Authority.)

Since McKenzie cannot recover punitive damages from WAPA, Russell is prohibited from accessing WAPA's financial records through the civil rules of discovery in the *McKenzie* civil suit. Additionally, in the *McKenzie* suit, Russell's discovery is limited under FED. R. CIV. P. 26(b)(1) to "[a]ny matter, not privileged, that is relevant to the claim or defense... ." To emphasize, because McKenzie cannot recover punitive damages from WAPA, its financial records and numerous items listed in 30 V.I.C. § 8 (*See supra* p.5) are not relevant to that lawsuit, and therefore not discoverable by Russell. *See* FED. R. EVID. 401. Accordingly, Russell, as the hearing examiner, will have access to confidential and financial records of WAPA, which he cannot obtain through the civil discovery rules. Moreover, in *Chenoweth v. Schaaf*, 98 F.R.D. 587 (W.D. Pa 1983), the United States District Court of Pennsylvania held that a defendant's financial records are relevant and discoverable, if there is a possibility for punitive damages. *Id.* at 588-90. That Court stated, "the complaint must allege a set of circumstances which will demonstrate to the Court at least a real possibility that punitive damages will be at issue ... then discovery of the financial conditions of the defendant will be allowed ... ." *Id.* at 589. *See also, Blount v. Wake Electric Membership Corporation*, 162 F.R.D. 102 (E.D. N.C. 1993) (holding that in a personal injury case financial records are

50

not allowed under discovery rules unless viable claim for punitive damages exists.) Both cases buttress the claim for refusing any form of access to WAPA's financial records by a party litigant or the party's attorney when punitive damage is not an issue in the case.

Even if Russell has completed discovery in the *McKenzie* suit, further discovery can be conducted up to the date of trial and during trial. FED. R. CIV. P. 26(b)(1). It must be emphasized and underscored that Russell will have access to WAPA's confidential information that can be utilized against WAPA, while simultaneously circumventing the discovery rules in the *McKenzie* civil suit. The confidential and financial information Russell can access as hearing examiner can serve him well in any negotiations of settlement with WAPA. Is Attorney Russell prepared to ignore, disregard and close his eyes to the information he receives as hearing examiner that can be advantageous to his client?

Importantly, Russell has a pecuniary interest in the outcome of the *McKenzie* suit.[5] The *McKenzie* lawsuit is a personal injury case. Such cases are typically prosecuted on a contingent fee basis. Therefore, the greater the monetary recovery, the higher the attorney's fees. From examining plaintiff's allegations in the *McKenzie* suit, it is not unreasonable to assume that McKenzie and her counsel will be seeking hundreds of thousands of dollars in damages. Unlike a $5,000.00 or $15,000.00 lawsuit, the *McKenzie* case could conceivably involve substantial damages for personal injuries. For example, in a March 8, 2002 Supplemental Memorandum in Support of Petition of Appeal to Disqualify Ronald Russell as Hearing Examiner, WAPA informs that Russell co-signed a settlement demand letter to WAPA in the *McKenzie* case, seeking a settlement of $300,000.00 for his client. A copy of the settlement demand letter was attached as an exhibit to WAPA's supplemental memorandum. Is Russell an objective hearing examiner

---

[5] Ironically, WAPA is required to pay the Commission, which includes Attorney Russell for their cost incurred in conducting the rate investigation. 30 V.I.C. § 25 in pertinent part states "In connection with any proceeding involving a public utility with a net investment of $1,000,000 or more, the expense of any investigation or proceeding of any nature by the Commission of or concerning any public utility operating in the United States Virgin Islands, and all expenses of any litigation, including appeals, arising from any such investigation, valuation, revaluation, or proceeding, or from any order or action of the said Commission, shall be borne by the public utility investigated ... ." (emphasis added).

when he currently is in an adversarial posture with WAPA, in which he has a personal interest? It is unfair for Russell as hearing examiner to have access to WAPA's financial records while there is the possibility of settlement in the *McKenzie* civil suit. Likewise, in any settlement negotiation in the *McKenzie* case, Russell would enjoy an unfair advantage resulting from his position as hearing examiner. Russell's access to WAPA's confidential information could provide him with insider information throughout settlement negotiations in the *McKenzie* civil suit, which he otherwise cannot discover. Information so obtained will be to WAPA's detriment.

The mere fact that Russell's client has a civil suit against WAPA while he is the hearing examiner investigating WAPA's rates conjures the issue of a conflict of interest. As hearing examiner, Russell is expected to give impartial and objective recommendations to the Commission, after conducting a rate investigation. How can Russell impartially give recommendations to the Commission when he can very well have a disagreement with WAPA over the value of the law suit in any attempt to settle the *McKenzie* suit. It cannot be overemphasized that Russell has a personal stake or interest in the lawsuit against WAPA. Russell's attorney's fees can very well be determined by the amount McKenzie recovers in the personal injury suit against WAPA. Being the hearing examiner while simultaneously prosecuting a civil suit against WAPA undeniably creates a conflict of interest, which undermines the integrity of the rate investigation. Under the circumstance, Russell's objectivity can very well be questioned and compromised. The rate investigation should be conducted by someone who has no potential conflict of interest or conflict of interest with WAPA or by someone whose objectivity in the investigation cannot be questioned or impugned. The findings from the rate investigation, Russell's recommendations to the Commission, and acceptance of the recommendation by the Commission can be extremely costly to WAPA and can adversely impact the fiscal integrity of the Utility.

It is important and should be emphasized that the Court is not questioning the Commission's right or province to choose its hearing examiners or a hearing examiner of its choice and choosing. However, the Commission's hearing examiner must be unbiased, impartial and objective in his investigation of WAPA. Likewise, the person should be devoid of any conflict of interest or potential conflict of interest with the

public utility being investigated. The Court is not unmindful that Russell will only be making recommendations to the Commission. Nonetheless, his recommendations could very well or more likely than not influence the Commission's final decision on the rate investigation. The Commission retained Russell, because of the commission members' confidence in him. Therefore, it is plausible to assume and anticipate that his recommendations to the Commission will be highly valued and more likely than not be adopted by the Commission in whole or in part.

## III. CONCLUSION

■ The Court finds that Russell should be removed as hearing examiner in the rate investigation of WAPA because 1) Russell is in an adversarial position to WAPA by simultaneously representing McKenzie in a civil suit against WAPA in which he alleges negligence and wrongdoings by WAPA, 2) Russell as hearing examiner will have access to WAPA's confidential information, financial and otherwise which may be used in the McKenzie civil suit in circumvention of the civil discovery rules, and 3) [f]or Russell to serve as hearing examiner while simultaneously suing WAPA on behalf of a client undeniably creates a conflict of interest. The Court having considered the premises, Petitioner Virgin Islands Water and Power Authority's Petition of Appeal will be granted; and Ronald Russell, Esquire is disqualified as hearing examiner for Respondent Public Services Commission's rate investigation of WAPA. An order of even date will be entered consistent with this memorandum opinion.