**VIRGIN ISLANDS PUBLIC SERVICES COMMISSION,**
**Appellant/Respondent/Defendant**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY,**
**Appellee/Petitioner/Plaintiff**

S. Ct. Civ. No. 2007-027

Supreme Court of the Virgin Islands

June 9, 2008

TANISHA BAILEY-ROKA, ESQ. (Argued), Assistant Attorney General, St. Croix, U.S.V.I., DOLACE MCLEAN, ESQ., Assistant Attorney General, St. Thomas, U.S.V.I., *Attorneys for Appellant.*

SAMUEL H. HALL, JR., ESQ., Hall & Griffith, St. Thomas, U.S.V.I., *Attorney for Appellee.*

HODGE, *Chief Justice*; D'ERAMO, *Justice Pro Tem*; and MOORE, *Justice Pro Tem.*[1]

## OPINION OF THE COURT

(June 9, 2008)

Appellant, the Virgin Islands Public Service Commission (hereafter "PSC"), appeals the Superior Court's order holding that PSC's power to regulate the Virgin Islands Water and Power Authority (hereafter "WAPA") is limited solely to rate-setting and does not include the power of general oversight. For the reasons which follow, the Superior Court's order will be affirmed.

## I. BACKGROUND

Before addressing the Superior Court order that is the subject of this appeal, a brief history of the relationship between WAPA and PSC is helpful. In 1964, the Virgin Islands Legislature created WAPA as "a public corporation and autonomous governmental instrumentality" with its own Governing Board for the purpose of developing and providing water and electric power services for the people of the Virgin Islands. V.I. CODE ANN. tit. 30 §§ 103, 105.

Initially, WAPA was granted the unregulated authority to set its own rates, while PSC served only in an advisory role with respect to WAPA's rate-setting. *See* 30 V.I.C. § 105(12). After WAPA announced in 1972 that

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. In his place, Judge Francis J. D'Eramo, a sitting judge of the Superior Court of the Virgin Islands, Division of St. Croix, sits by designation pursuant to title 4, section 24(a) of the Virgin Islands Code. Associate Justice Maria M. Cabret is also recused from this matter. In her place, Judge Thomas K. Moore, a retired judge of the District Court of the Virgin Islands, sits by designation.

it planned to increase its rates, a lawsuit ensued seeking to prevent the rate increase. *See V.I. Hotel Assn., Inc. v. V.I. Water & Power Auth.*, 8 V.I. 620, 54 F.R.D. 377 (D.V.I. 1972). Shortly thereafter, in 1973, the Legislature amended title 30 of the Virgin Islands Code for the purpose of expanding PSC's power to regulate certain activities of public utilities. *See, e.g.,* 30 V.I.C. §§ 1, 39[2]; *see also* 1973 V.I. Sess. Laws 164 (Act No. 3460). WAPA's proposed rate changes thereby became subject to PSC's approval. *See* 30 V.I.C. § 1(c) ("The rates for public utility service supplied by the Government shall be fixed, unless fixed by law, in the same manner as rates for public utility services furnished by a private entity.").[3]

Following the amendment of title 30, section 1(c), two opinions directly interpreted the scope of PSC's jurisdiction over WAPA. On October 17, 1973, then Attorney General Verne A. Hodge stated, in a published opinion, that PSC would no longer serve WAPA in a merely advisory capacity but would instead have jurisdiction over WAPA for rate-setting purposes. *See* 7 V.I. Op. Att'y Gen. 196 (1973). This interpretation was confirmed in a 1977 District Court of the Virgin Islands case that arose when PSC sued WAPA asserting that PSC's approval was required before WAPA could sell a power-generating unit on St. Croix. *See PSC v. WAPA,* Civ. No. 77/110 (D.V.I. June 17, 1977). The District Court, in *PSC v. WAPA,* held that "the Laws of the Virgin Islands do not empower [PSC] to regulate, approve or disapprove" the sale of the generating plant because PSC is "limited to its power to fix rates as provided in 30 [V.I.C.] Sec. 1(c)." *Id.*

Despite subjecting WAPA's rates to PSC's jurisdiction, the Legislature did not alter section 121 of WAPA's enabling statute which continues to state that no other government entity has jurisdiction over WAPA, including with respect to rate-setting. *See* 30 V.I.C. § 121. The Legislature

---

[2] Prior to the 1973 amendment, title 30, section 1(c) read:

The rates for public utility services supplied by the Government shall be fixed, unless fixed by law, by the head of the department having jurisdiction of its operation and administration, subject to approval of the Governor, *or in case of water or electric power service, by the Virgin Islands Water and Power Authority. The Public Utilities Commission shall serve in an advisory capacity.*

1965 V.I. Sess. Laws 182 (Act. No. 1435, § 1) (emphasis added).

[3] WAPA is deemed a "public utility" pursuant to title 30, sections 1(a)(4) and (a)(5) because it is in the business of supplying water and electric to the people.

did, however, amend title 30, section 122 in 1980 to provide that "[n]othing . . . shall be construed as exempting the Virgin Islands Water and Power Authority from any law made specifically applicable thereto or generally applicable to independent instrumentalities of the Government . . . ." Following the 1980 amendment, the Legislature amended section 105 several times thereby expanding WAPA's enumerated powers. *See, e.g.,* 30 V.I.C. §§ 105(7), (10), (19), and (20).

With that background, we now turn to the instant appeal which arises from an order issued to WAPA by PSC on April 2, 2003. Specifically, paragraph 8 of the order provides that PSC "[directs] the implementation of oversight measures," including:

(a) requiring the review and approval by the Commission of the justification and the selection of the final designs of the new generating projects to be financed with bond funds;

(b) the Commission will review and approve the methods chosen for implementation of the capital projects;

(c) the Commission will review and approve the progress of the capital project implementation; and

(d) the Commission will review the impact of these projects on the level of service to WAPA consumers.

On May 5, 2003, WAPA petitioned PSC to reconsider clauses (a)-(c) of paragraph 8 but the petition was deemed denied by operation of law when the PSC failed to act on the motion within 30 days. *See* 30 V.I.C. § 33. On August 26, 2003, WAPA appealed to the now Superior Court alleging that it would suffer substantial and irreparable financial harm and property loss and that consumers could face blackouts if clauses (a)-(c) are not repealed.[4] On November 18, 2003, WAPA also filed a declaratory judgment action challenging PSC's authority to prohibit WAPA from exercising its section 105 enumerated powers.

---

[4] Both WAPA's initial "Petition of Appeal," filed on August 4, 2003, and its subsequent declaratory judgment action state that: "[t]he Authority does not object to the review and reporting responsibility of the PSC but it does object to paragraph 8 to the extent that it requires PSC approval of the Authority's management decisions." (J.A. at 344, 374.) WAPA's appeal to the trial court maintained that unless clauses (a)-(c) are clarified, PSC would have approval of WAPA's day-to-day management decisions which could lead to problems with WAPA's bondholders. (J.A. at 345, 374-75.)

On February 4, 2004, the trial court consolidated WAPA's appeal and declaratory judgment action. On January 8, 2007, the trial court reversed PSC's decision and ruled in WAPA's favor, holding that section 1(c) does not give PSC general oversight authority over WAPA. Specifically, the court held that PSC's power is limited to the regulation of WAPA's rates and services "and does not extend to any regulation that is a direct infringement on the Authority's explicit powers." (Supplemental App. at 18.) Thereafter, PSC appealed to this Court on March 1, 2007.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has jurisdiction over all appeals arising from final judgments or orders of the Superior Court pursuant to title 4, section 32(a) of the Virgin Islands Code. This appeal was timely filed within sixty days. *See* V.I. S. CT. R. 5(a)(1) (providing a sixty-day deadline to file an appeal when the Government of the Virgin Islands is a party).

Our standard of review in examining the Superior Court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In particular, we exercise plenary review of questions of statutory construction. *Creque v. Luis*, 803 F.2d 92, 93-94 (3d Cir. 1986).

### B. WAPA Is Subject to Oversight by PSC for Rate-Setting Purposes

PSC and WAPA each cite to conflicting statutory authority to support their respective positions as to the scope of PSC's power to regulate WAPA's actions. Therefore, we find it necessary to review the various statutes at issue in this case.

PSC essentially asserts that the Legislature intended to grant PSC general oversight power over WAPA through the enactment of title 30, sections 1, 23, and 122 of the Virgin Islands Code. Section 1 provides, in relevant part that:

> (a) The following services provided by an individual, firm, co-partnership, association, corporation or other person for compensation are declared to be affected with a public interest and are defined to be a public utility subject to this chapter, and the person providing such service to be a "public utility" . . . .

(4) water supply services; except retail deliveries;

(5) electric power service; . . .

. . . .

(c) The *rates* for public utility service supplied by the Government shall be fixed, unless fixed by law, in the same manner as *rates* for public utility services furnished by a private entity.

30 V.I.C. §§ 1(a), (c) (emphasis added).

Section 23 provides that PSC has the power to fix the reasonable rates and services of public utilities:

> (a) If upon such investigation the *rates* . . . shall be found to be unjust, unreasonable, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this chapter, the Commission shall have power to determine and by order fix and order to be substituted therefor such *rate and rates,* charges, or schedules as shall be just and reasonable . . . If upon such investigation, it shall be found that . . . reasonable service is not supplied, the Commission shall have power to determine and substitute therefor such other regulations, time schedule, service or acts . . . as shall be reasonable. . . .

30 V.I.C. § 23(a) (emphasis added).

WAPA argues that the Legislature intended to subject WAPA to PSC's review only with respect to rate-setting, as is evidenced by the Legislature's continued expansion of WAPA's title 30, section 105 powers and the Legislature's failure to repeal title 30, section 121. Section 121 reads, in its entirety:

> No officer, board, commission, department or other agency or political subdivision of the United States Virgin Islands shall have jurisdiction over the Authority in the management and control of its properties and facilities, or any power over *the regulation of rates,* fees, rentals and other charges to be fixed, revised and collected by the Authority, or any power to require a certificate of convenience or necessity, license, consent, or other authorization in order that the Authority may acquire, lease, own and operate, construct, maintain, improve, extend or enlarge any facility.

30 V.I.C. § 121 (emphasis added).

Section 105 of WAPA's enabling statute grants WAPA the powers, among others: to make its own internal rules, to contract, to acquire property, to dispose of property with some restrictions, to borrow money, to make and issue bonds, to have complete control and supervision of facilities and properties constructed or acquired by it,[5] to acquire and dispose of water, electric power, and equipment, and to do "all acts or things necessary or desirable to carry out the powers granted to it by this chapter or by any other Act of the Legislature of the . . . Virgin Islands." 30 V.I.C. § 105.

■ Both parties agree that PSC has power over WAPA with respect to rate-setting. We concur with this stipulation. Despite section 121's proviso that no government entity has jurisdiction over WAPA, the Legislature enacted section 1(c) giving PSC power over WAPA, as a government-owned public utility, as to the fixing of rates. According to statutory law interpretation, "last-in-time" is a suitable way to reconcile the two conflicting statutes, section 1(c) and section 121. *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 311 (3d Cir. 2006). Here, section 1(c) is the later-enacted statute, and it should take priority over section 121.

■ Additionally, "[i]t is a well-established canon of statutory construction that when two statutes cover the same situation, the more specific statute takes precedence over the more general one," unless it appears that the Legislature intended for the more general to control. *Coady v. Vaughn*, 251 F.3d 480, 484 (3d Cir. 2001) (citing *Edmond v. U.S.*, 520 U.S. 651, 657, 117 S. Ct. 1573, 1578, 137 L. Ed. 2d 917 (1997)); *accord Creque*, 803 F.2d at 94. Here, section 1(c) is the more specific statute because it applies only to a specific type of action, namely fixing rates, for a specific type of agency, namely public utilities, which includes those utilities supplied by the government. Section 121's prohibition applies to all government agencies in the Virgin Islands with respect to many types of actions, including WAPA's power to set rates.

---

[5] Section 105(13), which gives WAPA complete control over facilities and properties acquired by it, goes on to state that this control "[includes] the power to determine the character and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid, and *such determinations shall be final and conclusive for all purposes*" (emphasis added).

*See id.* at 94-95; *see also Abramson v. Georgetown Consulting Group, Inc.*, 765 F. Supp. 255, 262 (D.V.I. 1991).

Therefore, under several rules of statutory construction it is clear that the Legislature intended section 1(c) to control WAPA's rate-setting actions, rather than section 121. Moreover, since the amendment to section 1(c) specifically removed the provision giving PSC a mere "advisory" role with respect to rate-setting for government-provided utilities, like those provided by WAPA, it is apparent that the Legislature intended greater oversight by PSC with respect to WAPA's rate-setting actions.

██ This Court is mindful that repeal by implication is generally disfavored and should occur only when "the later statute expressly contradicts the original act" or when "such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, ___ U.S. ___, 127 S. Ct. 2518, 2532, 168 L. Ed. 2d 467 (2007) (quotations marks, ellipses and brackets omitted); *accord In re Guardianship of Penn*, 15 F.3d 292, 295, 29 V.I. 396 (3d Cir. 1994); *Creque*, 803 F.2d at 94 (stating that when a general and specific act are *in pari materia,* i.e. they address the same subject matter, they "should be harmonized if possible"). Here, the Legislature enacted section 1(c) with the explicit purpose of subjecting WAPA to PSC's jurisdiction for the purpose of rate-setting but the earlier-enacted section 121 continues to shield WAPA from such assertion of jurisdiction. We conclude that section 1(c) is intended as an exception to section 121. *See Creque*, 803 F.2d at 95; *see also Abramson*, 765 F. Supp. at 262, n. 9 ("when two statutes are *in apparent conflict and the latter statute does not cover the whole subject matter of the earlier one, the latter statute is generally considered an implied exception to the earlier statute.*" (emphasis in original)). Therefore, if section 1(c) is to "have any meaning at all," it must be read as impliedly deleting the word "rates" from section 121 while leaving intact the remaining provisions of section 121. *See Nat'l Ass'n of Home Builders*, 127 S. Ct. at 2532.

## C. PSC Does Not Have the Power of General Oversight over WAPA

Having decided that PSC may regulate WAPA's rates, we must now determine if the scope of PSC's power over WAPA extends any further. The main source of contention between the parties on this point stems

from the meaning and effect of title 30, section 122 on WAPA's powers. Section 122 states, in full:

> Nothing in this chapter shall be construed as exempting the Virgin Islands Water and Power Authority from any law *made specifically applicable thereto or generally applicable to independent instrumentalities* of the Government of the United States Virgin Islands, whether such law was enacted before, on, or after February 14, 1980.

30 V.I.C. § 122 (emphasis added). PSC argues that the Legislature intended, by enacting section 122, to subject WAPA's actions to general oversight by PSC. Specifically, PSC reads the language "any law made . . . generally applicable to independent instrumentalities of the Government" as subjecting WAPA to every power granted to PSC by its enabling statute. *See, e.g.,* 30 V.I.C. § 8 (requiring all public utilities to supply PSC with "accounts, reports, and information" whenever PSC shall require). WAPA, conversely, contends that the Legislature intended to extend to WAPA the Sunshine Act[6] and other laws made generally applicable to independent instrumentalities like WAPA, as well as those made specifically applicable to WAPA. We note that the trial court's holding, which is the subject of this appeal, rested entirely upon the conflict between sections 1(c) and 121 and, although raised by PSC, did not find it necessary to reach or discuss the impact of section 122 on the scope of PSC's power over WAPA.[7]

We find WAPA's argument as to this issue most persuasive. Prior to the 1980 amendment of section 122, WAPA was explicitly exempt from laws "made generally applicable to independent instrumentalities." Although the legislative record surrounding the amendment to section 122 lacks any instructive discussion regarding the Legislature's intent, the timing of the amendment is informative. Just three weeks after the District Court held that the Sunshine Act did *not* apply to WAPA, the Legislature amended section 122 so that it reads as it currently does. *See V.I. Press Ass'n v. Luis,*

---

[6] The Sunshine Act, codified at 1 V.I.C. § 251-56, requires that most meetings of government agencies be made open to the public.

[7] In a separate action, *WAPA v. PSC*, Civ. No. 657-2004 (V.I. Super. Dec. 1, 2006), the Superior Court interpreted section 122, in dicta, as granting PSC "the authority to issue orders and to regulate WAPA as a public utility operating in the United States Virgin Islands." The decision which was in WAPA's favor ultimately rested, however, upon due process grounds. *WAPA v. PSC*, Civ. No. 657-2004 (V.I. Super. Dec. 1, 2006).

17 V.I. 329 (D.V.I. 1980). It appears that the immediate amendment of section 122 was a direct response to that holding. *See Creque*, 803 F.2d at 95 ("[section] 122 . . . was enacted along with several other similar provisions applying to other governmental instrumentalities in response to a district court ruling in early 1980 excepting WAPA from general laws").

The Third Circuit Court of Appeals, in *Creque*, 803 F.2d at 95-96, similarly faced the argument that because section 122 removed WAPA's prior exemption from laws of general applicability, the general statute at issue there, title 3, section 65a[8], should override the more specific, earlier-enacted WAPA statute, title 30, section 103(a)[9]. The court held in WAPA's favor, in part, because, after enacting section 122, the Legislature "retained and slightly refined" section 103(a). *Id.* at 95.

■ In this case, although the Legislature did not refine the earlier-enacted section 121 after enacting section 122, neither did it modify or repeal section 121. As the *Creque* court aptly stated, "a legislature is presumed to have all previous legislation before it when it enacts new legislation." *Id.* Notably, despite having section 121 before it when the Legislature amended section 122, section 121 remained unaltered.

■ Although this failure to amend or repeal section 121 after enacting section 122 is instructive, we find it necessary to unearth the extent to which the Legislature intended section 122 to subject WAPA to PSC's oversight. The elucidating language in section 122 is: "any law made specifically applicable [to WAPA] or generally applicable to independent instrumentalities of the Government." 30 V.I.C. § 122. By its terms, this language subjects WAPA only to laws that are specific to WAPA and those that apply generally to independent instrumentalities.

■ The powers to which PSC seeks to subject WAPA are contained in title 30, chapter 1 which is titled "Public Utilities Generally." Facially, PSC's chapter 1 powers apply *only to public utilities generally* and not to WAPA specifically. Moreover, it is clear that PSC's chapter 1 powers do

---

[8] Title 3, section 65a establishes a 60-day limitation of board service following expiration of "membership of any board, commission or governing board of any authority within a department, office or other instrumentality of the Government of the Virgin Islands." 3 V.I.C. § 65a.

[9] Title 30, section 103(a) allows such service to continue indefinitely "until the appointment and confirmation of a successor." 30 V.I.C. § 103(a).

not apply generally *to independent instrumentalities of the government* because they do not apply, for example, to the Virgin Islands Port Authority ("VIPA"), the Virgin Islands Housing Finance Authority, or the Public Finance Authority—all of which are independent instrumentalities for purposes of section 122.[10] Therefore, section 122 is not a pathway to subject WAPA to PSC's chapter 1 powers because section 122 removed WAPA's exemption from jurisdiction *only* with respect to laws specific to WAPA or generally applicable to independent instrumentalities. If the Legislature had intended to subject WAPA to general oversight by PSC, it would have repealed or amended section 121's express grant of freedom from the jurisdiction of all government agencies and commissions.

██ We find no persuasive authority for holding that the 1980 amendment of section 122 was intended[11] to grant PSC broad regulatory powers over WAPA's managerial actions.[12] Consequently, there is no apparent conflict between sections 121 and 122. Thus, we will affirm the trial court's decision that PSC's power over WAPA is limited solely to the power to fix WAPA's rates.[13] WAPA shall retain the autonomy granted to it by section 121, with the exception of fixing its rates.

### III. CONCLUSION

For the reasons stated above, we conclude that the word "rates" was impliedly deleted from title 30, section 121 by the enactment of title 30,

---

[10] *See, e.g., WAPA v. PSC*, 45 V.I. 44, 50 (V.I. Super. Ct. 2002) (stating that VIPA is an independent government instrumentality); *see also* 29 V.I.C. § 541(a); 21 V.I.C. § 103; 29 V.I.C. § 918.

[11] We note that, if PSC believes the amendment to section 122 was intended to subject WAPA to general oversight by PSC and that such general oversight is necessary to its regulatory duty, it is free to request that the Legislature amend or repeal section 121 to clearly permit such oversight.

[12] We note the significance of the fact that, when the Legislature created WAPA, it expressly provided WAPA with its own Governing Board for its management. *See* 30 V.I.C. §§ 103, 104. By doing so, the Legislature clearly intended that it be the responsibility of WAPA's Board, not PSC, to establish and implement WAPA's managerial decisions whilst subjecting WAPA's rates to PSC's jurisdiction.

[13] As a practical matter, PSC is not precluded from making recommendations to WAPA, and PSC's authority to fix WAPA's rates "in the same manner as rates for public utility services furnished by a private entity," pursuant to 30 V.I.C. § 1(c), would add a certain weight to those recommendations. What PSC may not do, however, is assume control over WAPA's general managerial decisions by subjecting them to PSC's prior review and approval.

section 1(c). WAPA is thereby subject to PSC's review for rate-setting purposes only. Title 30, section 122 is not the vehicle by which PSC's chapter 1 powers can be applied to WAPA because that chapter does not apply specifically to WAPA nor generally to independent instrumentalities of the government. Therefore, PSC does not have the power of general oversight over WAPA's actions. Accordingly, we affirm the Superior Court order which is the subject of this appeal.