**STANLEY D. SMITH, Appellant/Plaintiff**

**v.**

**DENISE A. HENLEY, Appellee/Defendant**

S. Ct. Civil No. 2017-0006

Supreme Court of the Virgin Islands

October 27, 2017

 

DARREN JOHN-BAPTISTE, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

DENISE A. HENLEY, St. Thomas, USVI, *Pro se.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(October 27, 2017)

HODGE, *Chief Justice.* Stanley D. Smith appeals from a December 15, 2016 Superior Court order awarding his ex-wife, Denise A. Henley, a 2.5% interest in the portion of his government pension earned during their marriage, and a 50% interest in land purchased during the marriage. Smith also contests the Superior Court's receipt of portions of his Government Employees Retirement System ("GERS") records into evidence. Because Henley's equitable interest in Smith's GERS pension was not statutorily prohibited, and because the Superior Court's distribution of marital property and evidentiary ruling were not an abuse of discretion, we affirm.

## I. BACKGROUND

Stanley D. Smith and Denise A. Henley were married on August 18, 1990, and separated on June 10, 2012. (J.A. 66.) Smith filed a verified petition for divorce on July 10, 2014 (J.A. 9), and the matter came before the Superior Court for a final hearing on March 9, 2016. (J.A. 45.) Together the parties had two children, both adults at the time of separation. (J.A. 71.)

In 2004, Smith and Henley acquired a vacant plot of land at 17-1 Raphune Hill, St. Thomas for $65,000, on which Smith was still making payments at the time of trial. (J.A. 82, 147.) At trial, Henley testified that she had made payments of $600 per month from 2004 through 2010 towards the mortgage, until she began paying her son's student loan, which made further payments on the property difficult. (J.A. 149-50.) Smith furnished documents demonstrating that he made regular bi-weekly payments on the land since its acquisition. (J.A. 171.) Henley testified —

and Smith denied — that but for her good credit, the parties would not have been able to secure a mortgage on the property. (J.A. 148-49.)

Smith retired from the Government of the Virgin Islands Department of Sports, Parks, and Recreation on December 31, 2014, after approximately thirty-one years of service. (J.A. 17, 75.) Since retirement, Smith's sole income has been a bi-weekly, $1,200 net annuity from the GERS. (J.A. 75-76.) Over Smith's multiple objections at trial, Henley called GERS director of member services, Carol Sasso, to testify, and introduced various documents detailing Smith's GERS account into evidence. (J.A. 139.) At the time of trial, Henley worked for the Virgin Islands Carnival Committee, and had been an employee there for the previous twenty-two years. (J.A. 143.) Henley testified that she expects a pension of $22,000 per year from her former employment with the Girl Scouts of America upon reaching retirement age. (J.A. 168.) Smith did not indicate an interest in Henley's pension, but he did seek an award of the entirety of the Raphune Hill property. (J.A. 189-91.) Henley did not pursue alimony from Smith, but sought a 50% interest in Smith's GERS pension. (J.A. 191.) Henley also sought a 50/50 distribution of the Raphune Hill property. (J.A. 193.)

The Superior Court entered a judgment embodying its findings and conclusions on December 15, 2016. It held that because pensions fall within the statutory definition of "marital property" in the Virgin Islands, Henley had an equitable interest in Smith's GERS benefits. (J.A. 33.) Accounting for Smith and Henley's respective financial situations, the Superior Court awarded Henley a 2.5% interest in the portion of Smith's pension earned during their marriage.[1] (J.A. 38.) The Superior Court also awarded Smith and Henley each a 50/50 share in their Raphune Hill property. (J.A. 37-38.) On January 9, 2017, Smith filed a timely notice of appeal with this Court. V.I. R. APP. P. 5(a)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]"

---

[1] The Superior Court's mathematical formula was as follows: (number of years of marriage ÷ number of years of government service into pension) x net monthly benefit after loan deduction x 0.025. (J.A. 38.)

48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). Because the Superior Court's December 15, 2016 order granting Henley a 50% interest in the parties' Raphune Hill property and a 2.5% interest in Smith's GERS pension was a final order, this Court has jurisdiction over this appeal. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 434 (V.I. 2013).

This Court "exercise[s] plenary review of questions of statutory construction." *V.I. Public Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008). We review the Superior Court's distribution of marital property in divorce for abuse of discretion. *Inniss v. Inniss*, 65 V.I. 270, 275 (V.I. 2016). Similarly, this Court reviews a trial court's evidentiary rulings for abuse of discretion. *Francis v. People*, 57 V.I. 201, 229 (V.I. 2012).

## B. Reconciling 3 V.I.C. § 725 with 16 V.I.C. § 109(a)(7)

■ Smith does not challenge the Superior Court's finding that the broad definition of marital property in 16 V.I.C § 109(a)(7) includes pension benefits.[2] His sole contention is that his GERS pension is not equitably distributable in divorce because section 725 of title 3 of the Virgin Islands Code explicitly exempts *government* pensions from judicial process, except when the court is awarding alimony or child support. Because Henley waived any claim for alimony, Smith contends that section 725 should have prevented her from reaching his pension in divorce, and argues that the Superior Court erred when it distributed a portion of his GERS pension to Henley under section 109(a)(7) of title 16 of the Virgin Islands Code despite section 725's restriction on judicial assignment. We disagree.

---

[2] The Superior Court conducted a *Banks* analysis to determine whether pensions should be considered marital property within Virgin Islands common law. It concluded that the best rule for the Virgin Islands was to continue following the Territorial Court's decision in *Fuentes v. Fuentes*, 38 V.I. 29, 40 (V.I. Terr. Ct. 1997), which held that pension benefits are marital property. A *Banks* analysis was unnecessary, however, because the issue here is purely a matter of statutory interpretation, not common law. *See Gov't of the V.I., Dep't of Educ. v. St. Thomas/St. John Educ. Adm'rs Ass'n*, 67 V.I. 623, 633 (V.I. 2017) (conducting a *Banks* analysis to determine a common law question of first impression when the matter was not governed by statute); *see also Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011).

Title 3, section 725 of the Virgin Islands Code reads in its entirety as follows:

(a) The rights of a person to any annuity or benefit or right accrued or accruing to any person under the provisions of this chapter and the various moneys in the System created by this chapter, are hereby exempted from levy and sale, garnishment, attachment, or any other legal process whatsoever, and shall be unassignable except as in this chapter specifically otherwise provided.

(b) Notwithstanding subsection (a) of this section, the rights and benefits provided in this chapter are assignable only pursuant to actions for the support of a child, spouse, or other dependent, as ordered by any court of competent jurisdiction.

3 V.I.C. §§ 725(a)-(b).

16 V.I.C. § 109(a)(7) reads in relevant portion as follows:

(a) Whenever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree:

. . .

(7) for the award to the parties of all marital property, in accordance with principles of equitable distribution. For purposes of this paragraph, *'marital property' means all real and personal property acquired by either spouse subsequent to the marriage*[.]

16 V.I.C. § 109(a)(7) (emphasis added).

 It is a well-established canon of statutory construction that "when two statutes cover the same situation, the more specific statute takes precedence over the more general one, unless it appears that the legislature intended for the more general to control." *V.I. Public Servs. Comm'n*, 49 V.I. at 485. This is true even when the more specific statute was enacted before the more general one. *See Rohn v. People*, 57 V.I. 637, 647 (V.I. 2012) (holding that a more specific statute controlled even though it was enacted nineteen years before a general statute). Here, the Legislature enacted section 109(a)(7) after section 725, but section 725 is

more specific.[3] Thus, under this rule of statutory interpretation, it could appear that Smith's argument — that section 725 precludes the equitable distribution of his GERS pension under section 109(a)(7) — has merit, but while Smith's interpretation would be correct if the statutes in fact overlapped, here not only do the statutes not conflict, but section 725 does not apply to distribution of marital property in divorce proceedings.

■ ■ The first rule of statutory interpretation is "that when the statutory language is plain and unambiguous, no further interpretation is required." *Codrington v. People*, 57 V.I. 176, 185 (V.I. 2012) (citing *People v. Baxter*, 49 V.I. 384, 388 (V.I. 2008)). Although the language of section 725 protecting GERS pensions from "any [legal] process whatsoever" appears to plainly prohibit alienation by any judicial process, it does not specify the person or persons from whom the pension cannot be alienated. Section 725 states that "[t]he rights of *a person* to any annuity or benefit or right accrued or accruing to *any person* under the provisions of this chapter and the various moneys in the System created by this chapter . . . shall be unassignable[.]" (Emphasis added). Because section 725 does not clearly delineate which, or how many, individuals' rights it protects, and because it does not specify that it protects the individual pensioner alone, we look to other provisions of the same chapter to determine the intended beneficiaries of section 725.[4]

■ ■ Title 3, section 701 of the Virgin Islands Code — which established the GERS — clarifies in subsection (b) that the purpose of the GERS is "to encourage qualified personnel to enter and remain in the service of the Government of the United States Virgin Islands . . . and to enable such employees to accumulate reserves for *themselves, their dependents, and beneficiaries*[.]" (Emphasis added). Viewed in this context, it is clear that the Legislature intended section 725 to protect the

---

[3] The Legislature enacted 3 V.I.C. § 725(a) in 1959 and added subsection (b) in 2005. The Legislature enacted 16 V.I.C. § 109 in 1944, and added subsection (a)(7) in 2014. See Act No. 479, § 1 (V.I. Reg. Sess. 1959); Act No. 6794, § 17 (V.I. Reg. Sess. 2005); Bill No. 14, § 12 (V.I. Reg. Sess. 1944); Act No. 7702, § 1 (V.I. Reg. Sess. 2014).

[4] While we have discovered no record of legislative history indicating whether the legislature intended for the non-assignment clause of section 725 to apply to former spouses, we may look to other relevant contextual materials to determine the Legislature's intent when enacting a statute. *See Bryan v. Fawkes*, 61 V.I. 201, 231 (V.I. 2014) ("[T]he absence of any relevant legislative history does not leave us without interpretive tools."); *see also In re Adoption of L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) ("We must look to the context surrounding each statute to determine the Legislature's intent.") (internal quotation marks omitted).

pensioner, his dependents, and his beneficiaries who, in this case, include Henley. Accordingly, we conclude that the purpose of the non-assignment clause of section 725 was not to prohibit a pensioner's beneficiaries from reaching the pension's benefits, but rather, it is to protect the asset from the reach of third-party creditors. This conclusion comports with a 1977 decision by the District Court of the Virgin Islands — albeit unbinding on this Court — which opined "that the legislature did not intend to exempt the pension benefits of a pensioner from legal process issued to enforce or protect the rights of such pensioner's dependents or beneficiaries. To hold otherwise would render the [ ] language of 3 V.I.C. 701 [ ] meaningless and of no consequence." *Gov't of the V.I. ex rel. Delerme v. Hodge*, 14 V.I. 438, 443 (D.V.I. 1977).[5] Therefore, we hold that the non-assignment clause in section 725 does not exist to protect Smith's rights to his pension by prohibiting Henley, a beneficiary, from reaching it; it protects *both* Smith and Henley's interest in Smith's pension by insulating it from claims by interested third parties.

■ Other jurisdictions with similar statutes have drawn the same conclusion.[6] *See, e.g., Board of Trustees of Orlando Police Plan v. Langford*, 833 So. 2d 230, 232-33 (Fla. Dist. Ct. App. 2002) (holding that an anti-alienation act making a police pension plan unassignable was "irreconcilable" with Florida's newer equitable distribution statute, opining that the "former spouse should not be treated as the equivalent of a creditor in a dissolution proceeding, but rather as the true owner of his or her portion of the pension benefits"); *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 827 P.2d 1222, 1228 (1992) (finding that "anti-alienation provisions were designed to protect benefits from creditors and not from spouses and family members"); *Prince George's Cnty. Police Pension Plan v. Burke*, 321 Md. 699, 584 A.2d 702, 706-07 (1991) (holding that spouses were co-owners of benefits under pension plan and were not subject to anti-alienation provisions); *Rice v. Rice*, 1988 OK 83, 762 P.2d 925, 927 (Okla. 1988) (finding that an anti-assignment statute

---

[5] We note that the matter before the District Court in *Delerme* was whether 3 V.I.C. § 725 precluded the assignment of GERS pension benefits to child support payments, and that the court decided the case before the Legislature added subsection (b) to section 725 in 2005, which codified that exception.

[6] *See Ottley v. Estate of Bell*, 61 V.I. 480, 494 n.10 (V.I. 2014) ("When statutes from other jurisdictions are substantially similar to a Virgin Islands statute, this Court may look for guidance at how that jurisdiction's courts have interpreted the similar statute.").

protected members' benefits from creditors, not from inclusion in marital estates for purposes of equitable distribution); *In re Marriage of Hackett,* 113 Ill. 2d 286, 497 N.E.2d 1152, 1155, 100 Ill. Dec. 790 (1986) (determining that anti-alienation provisions were intended to protect firefighters and their beneficiaries from creditors, not to prevent division of benefits between divorcing parties); *see also* Charles C. Marvel, Annotation, *Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses,* 94 A.L.R.3d 176, § 4[e] (2017) ("It has been held or recognized, under particular provisions regulating various state employees' retirement plans, that the fact that the particular benefit is exempt from process does not affect its status as property otherwise subject to division or award by the court in settlement of property rights between spouses.").

██ ██ "In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or any other provision — wholly superfluous and without an independent meaning or function of its own." *In re Adoption of L.O.F.,* 62 V.I. 655, 661 (V.I. 2015) (internal quotation marks omitted). Interpreting the non-assignment clause of section 725 to mean that GERS pensions are insulated from process that would alienate the benefit from pensioners and their beneficiaries — thus protecting both Smith and Henley's rights to the asset — gives effect to every provision of section 725 while also leaving the function of 109(a)(7) fully intact. To hold otherwise would lead to inequitable consequences incongruent with the purpose of GERS pensions set out in section 701; a government-worker spouse could claim an equitable interest in the non-government worker spouse's pension, but not the other way around.[7]

██ ██ We also conclude that Henley's waiver of alimony under section 725(b) does not impact her right to receive equitable distribution of

---

[7] *See In re L.O.F.,* 62 V.I. at 661 ("[E]ven where a statutory scheme is plain and internally consistent, 'no statute should be read literally if such a reading is contrary to its objective [and] this Court must consider whether applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent.' ") (quoting *Gilbert v. People,* 52 V.I. 350, 356 (V.I. 2009)). *But see, e.g., Choice! Power, L.P. v. Feeley,* 501 S.W.3d 199, 214 (Tex. App. 2016) ("Unintended, improvident, inequitable, over-inclusive, or under-inclusive consequences of a statute is not proof of absurd results."); *Mellen Lumber Co. v. Indus. Comm'n of Wisconsin,* 154 Wis. 114, 142 N.W. 187, 189 (1913) ("The statute in question may be inequitable, but that does not make it absurd.").

Smith's pension as outlined by section 109(a)(7). This is because division of marital property and spousal support are distinct legal concepts; the former "operates retrospectively to adjust rights of parties to property already accumulated," while the latter is "prospective and deals with future support." *Sedbrook*, 827 P.2d at 1228; *compare* BLACK'S LAW DICTIONARY 655 (10th ed. 2014) (defining "equitable distribution" as "[t]he division of marital property by a court *in a divorce proceeding*, under statutory guidelines that provide for a fair, but not necessarily equal, allocation of the property between the spouses") (emphasis added) *with* BLACK'S LAW DICTIONARY 89 (10th ed. 2014) (defining "alimony" as "[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support while they are separated, while they are involved in a matrimonial lawsuit, or *after they are divorced*[;] [a]limony is distinct from a property settlement") (emphasis added). Therefore, because no third-party creditors have attempted to reach Smith's GERS pension, and because Henley waived any claim for alimony, neither section 725(a) nor section 725(b) is relevant to Henley's claim in this case.

 Because we conclude that neither section 725(a) nor section 725(b) was triggered in Smith and Henley's divorce, section 109(a)(7) is the controlling statute. While it appears that section 725 presupposes that the pensioner's marriage is still intact, a spouse or former spouse is nonetheless entitled to an interest in the retirement benefits earned during the marriage upon dissolution of the marriage under section 109(a)(7). Like all other marital property defined in section 109(a)(7), Henley's interest in Smith's GERS pension vested with each year it was earned during their marriage. Throughout her marriage to Smith, Henley indirectly contributed to and invested in the pension's future returns by being deprived of Smith's financial contribution to the marital household which were instead partially invested in the GERS pension benefits. And most significantly, because under section 109(a)(7), all real and personal property earned by one spouse during a marriage is jointly owned by both spouses, the Superior Court correctly determined that Henley had an equitable interest in Smith's GERS pension.[8]

---

[8] We note with some curiosity that Henley did not appeal the Superior Court's award of only 2.5% of the portion of Smith's pension earned during their marriage, which calculates to approximately $50 of Smith's $2,400 monthly net annuity.

## C. Equitable Distribution of the Raphune Hill Property

Smith alleges that the Superior Court abused its discretion when it awarded Henley a 50% interest in the Raphune Hill property. Specifically, Smith argues that because he has made a greater financial contribution to the purchase of the property than Henley, he is entitled to a greater interest in it. We disagree.[9]

 This Court will find that the trial court abused its discretion "only when the decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011) (internal quotation marks and citations omitted). Pursuant to 16 V.I.C. § 109(a)(7), all real and personal property acquired during the marriage by either spouse is marital property subject to equitable distribution. Where a party in a divorce proceeding is unable to prove that property was either acquired prior to the marriage, or is subject to the enumerated exceptions in 16 V.I.C. § 109(a)(7)(A)-(F), "the property is considered marital property owned in equal shares by the spouses and subject to distribution by the trial court." *Inniss*, 65 V.I. at 278.

 Here, because Smith and Henley acquired the Raphune Hill property in 2004 subsequent to their marriage, and it is not subject to any of the exceptions contemplated by section 109, it is marital property subject to equitable distribution by the trial court. At trial, the Superior Court heard Smith's testimony that he provided the down payment for the property, has made monthly payments on the outstanding mortgage, and is currently paying the real property taxes. The Superior Court heard testimony from Henley that between 2004 and 2010, she made regular payments into Smith's personal account to help with the mortgage

---

[9] Although Smith cites to our precedent in *Inniss v. Inniss*, 65 V.I. 270 (V.I. 2016) for the proposition that the Superior Court should consider a range of factors when engaging in an equitable distribution analysis, he provides no authority to support his contention that the Superior Court's decision in this case constitutes an abuse of discretion. Smith's failure to provide legal support for this argument on appeal violates our rules. *See* V.I.R. APP. P. 22(m) ("Issues that were . . . only averted to in a perfunctory manner or unsupported by argument and citation to legal authority[ ] are deemed waived for purposes of appeal[.]"). While this Court will nonetheless exercise its discretion to address the merits of this claim, we have no obligation to do so and may treat this issue as waived. *See One St. Peter, LLC v. Board of Land Use Appeals*, 67 V.I. 920, 930 n.4 (V.I. 2017); *Dupigny v. Tyson*, 66 V.I. 434, 439 (V.I. 2017); *Ernest v. Morris*, 64 V.I. 627, 641 (V.I. 2016).

payments. Henley also testified that, were it not for her good credit, she and Smith would not have been able to secure a mortgage on the property. Finally, the Superior Court heard testimony from both parties about their significant individual contributions to their two children's education.

The Superior Court, in its capacity as fact-finder, made credibility determinations with respect to Smith and Henley's assertions. It found that throughout their marriage, Smith and Henley acted as a team and, although through different means, each contributed to their ability to acquire and maintain the Raphune Hill property. It is clear from the record that the Superior Court considered "salient factors" surrounding the circumstances of the parties' marriage, and "there is no indication that the court's grant of a fifty percent interest in the . . . [Raphune Hill] property to . . . [Henley] was inequitable, let alone an abuse of discretion." *Drayton v. Drayton*, 65 V.I. 325, 340-41 (V.I. 2016). Since the Court's equitable determination was not "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact," this Court affirms the Superior Court's award of an equal interest in the Raphune Hill property to both parties. *Stevens*, 55 V.I. at 556.

## D. Admittance of Business Records

Finally, Smith argues that the trial court abused its discretion when it allowed GERS business records into evidence over his hearsay objections. Specifically, Smith argues that because individuals other than the testifying witness prepared parts of Exhibits 12a-h, and because the documents are sections of larger files, they lack the trustworthiness necessitated by Rule 803(6) hearsay exception. We disagree.[10]

The Rule 803(6) hearsay exception provides for the introduction of records of regularly conducted activity into evidence when:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

---

[10] We note again that, apart from a citation to the text of Federal Rule of Evidence 803(6), Smith provides no legal authority to support his contention that the admission of Exhibit 12A-H constitutes an abuse of discretion, in violation of V.I.R. APP. P. 22(m). *See supra*, note 9.

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of the information or the method or circumstances of preparation indicate a lack of trustworthiness.

FED. R. EVID. 803(6)(A)-(E).[11]

 Along with the testimony of Carol Sasso, director of GERS member services, Henley entered into evidence several subpoenaed documents pertaining to Smith's GERS account. At trial, Smith objected to the introduction of these documents, claiming that they were hearsay because some were signed and certified by Sasso's employees and not Sasso herself, and because they were portions of larger documents. In admitting the documents into evidence over Smith's objections, the trial Judge stated, "The Court is satisfied from the sum total of the testimony presented that the record was made at or near the time of the events depicted therein by someone with knowledge — that was conducted by someone that was in their business to do so and appear to be kept in the regular course of GERS business." (J.A. 139.) After Smith's cross-examination and continued objections, the trial Judge engaged in the following exchange with Sasso:

> THE COURT: Ms. Sasso, I have some questions to be absolutely sure. The documents that are in Exhibit 12, are you overall responsible for the records at GERS that you provided?
> THE WITNESS: Yes, I am.
> THE COURT: Are you familiar with the person, the author of the individual records included in twelve?

---

[11] At the time the Superior Court heard this case, the Virgin Islands courts applied the Federal Rules of Evidence. Pursuant to a subsequent Order issued by this Court on April 3, 2017, the Virgin Islands has adopted the Virgin Islands Rules of Evidence. *In re Adoption of Virgin Islands Rules of Evidence*, No. 2017-002, 2017 V.I. Supreme LEXIS 21, at *1 (V.I. Apr. 3, 2017). Federal Rule 803(6)(A)-(E) is identical to the pertinent Virgin Islands Rule of Evidence. We note that neither party has contended that the government records exception to the hearsay rule, Rule 803(8) is applicable. Hence, we do not address the application of that hearsay exception.

THE WITNESS: Yes, ma'am.

THE COURT: And were they compiled as part of that person's occupation?

THE WITNESS: Yes, ma'am.

THE COURT: And were they compiled at or near the time that are depicted in the events in these documents?

THE WITNESS: Yes, ma'am.

THE COURT: And were they kept in the regular course of GERS business?

THE WITNESS: Yes, ma'am.

(J.A. 141-42.) From the record, it is clear that the trial court Judge conducted a proper *voir dire* to determine whether Exhibit 12 satisfied the hearsay exception provided by Rule 803(6). The exchange plainly demonstrates that the evidence met each element of Rule 803(6)(A)-(E).

 Furthermore, we reject Smith's unsupported contention — that the evidence was *per se* untrustworthy under Rule 803(6) because the witness did not prepare the documents and because they were sections of a larger document — as meritless. In order for a document to be admitted as a business record, "the person who actually prepared the document need not have testified so long as other circumstantial evidence and testimony suggest [the record's] trustworthiness." *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984). And, as long as its proponent lays a sufficient foundation, the incompleteness of a document alone does not preclude its admission under the business records exception; rather, the incompleteness of a document goes towards its evidentiary weight or value. *See United States v. Abrego*, 141 F.3d 142, 178 n.27 (5th Cir. 1998) (rejecting the argument that their incompleteness rendered certain business records inadmissible, reasoning that "[t]he district court could properly conclude that the incompleteness of any of the records went to their evidentiary weight rather than their admissibility"). Consequently, because we conclude that the Superior Court's decision to accept Exhibit 12 into evidence was not "a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact," the Superior Court did not abuse its discretion in admitting the GERS records. *Stevens*, 55 V.I. at 556.

## III. CONCLUSION

Accordingly, because 3 V.I.C. § 725 did not preclude Henley from claiming her interest in Smith's GERS pension, we affirm the Superior Court's award of a portion of Smith's pension to Henley. Additionally, because the Superior Court did not abuse its discretion when it awarded the parties a 50/50 interest in the real property acquired during their marriage, or by allowing GERS business records into evidence, we affirm those portions of the Superior Court's ruling.