IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
July 26, 2022 12:17 PM
ST-2020-CR-00003
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | **CASE NO. ST-2020-CR-00003** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 14 V.I.C. § 297(a)(2) |
| | ) | 14 V.I.C. § 2253(a) |
| **SHEKIL JAMAC BERTHIER** | ) | 14 V.I.C. § 625(a) |
| | ) | 14 V.I.C. § 2256(a) |
| Defendant. | ) | |
| _____ | ) | |

2022 VI Super 68U

## MEMORANDUM OPINION

¶1    This matter is before the Court on Defendant Shekil Berthier's ("Berthier" or "Defendant")

Motion for Judgment of Acquittal, pursuant to Rule 29 of the Virgin Islands Rules of Criminal

Procedure ("V.I. R. CRIM. P."), filed on April 4, 2022.[1] Defendant seeks judgment of acquittal on

all charges. For the reasons set forth herein, the Court will grant Defendant's motion in part and

deny it in part.

### BACKGROUND AND PROCEDURAL POSTURE

¶2    This matter was tried to a jury beginning on March 7, 2022. The People of the Virgin

Islands (the "People") charged Berthier with four counts: (1) Third-Degree Assault, in violation of

V.I. CODE ANN. tit. 14, § 297(a)(2); (2) Unauthorized Possession of a Firearm During Commission

of a Crime of Violence, in violation of 14 V.I.C. § 2253(a); (3) Reckless Endangerment in the First

---

[1] The motion is fully briefed. The People filed an opposition on April 25, 2022, and Defendant filed his reply on May 23, 2022.

Degree, in violation of 14 V.I.C. § 625(a); and (4) Unauthorized Possession of Firearm Ammunition, in violation of 14 V.I.C. § 2256(a).

¶3    On March 9, 2022, the People completed presentation of their case in chief. After the People rested, Defendant orally moved for judgment of acquittal on all four charges, pursuant to V.I. R. CRIM. P. 29, and the People orally objected. The Court denied Defendant's motion as to Counts One (third-degree assault) and Four (unauthorized possession of firearm ammunition), but reserved ruling on the motion for Counts Two (unauthorized possession of a firearm during commission of a crime of violence) and Three (reckless endangerment in the first degree). In the instant motion, Berthier requests the Court reverse its oral ruling denying judgment of acquittal for Counts One and Four and moves for judgment of acquittal on all four counts.

## FACTS

¶4    At trial, during the People's presentation of their case in chief, the Court heard testimony from Penn, Sylvia Samuel (Penn's girlfriend), Virgin Islands Police Department ("VIPD") Lieutenant Jorge Gonzalez, and VIPD Detective Cherese Thomas, among others. These witnesses' testimony will be discussed in detail throughout the analysis. However, a general overview of the facts of this matter is as follows.

¶5    The evidence admitted at trial revealed that on October 16, 2019, Renaldo Penn ("Penn") was driving home to Estate Frydenhoj, St. Thomas, U.S. Virgin Islands, and he was within view of his home when he came upon a vehicle stopped in the road, impeding Penn from proceeding to his home. Penn testified there were two (2) persons inside the vehicle and one (1) person standing outside the vehicle talking to the occupants of the vehicle. Penn testified he honked and waved at the vehicle in the road, and then opened the door of his truck, exited, and stood between his truck and the driver's side front door, motioning for the driver of the vehicle to move so Penn could

pass. Penn testified the person standing outside talking to the persons in the vehicle then went down a set of stairs leading to a home below the road, returned up the stairs carrying a firearm, and fired a shot at Penn from four (4) or five (5) feet away. The item shot from the firearm hit Penn's truck, creating a hole in the driver's side frame and a crack in the windshield. The vehicle blocking the road drove away.

¶6     Samuel testified that during the incident she was seated in her parked car slightly up the road outside Penn's home, waiting for him to arrive as she was locked out of their shared home. She witnessed the events from her vantage point, including noticing an individual who was standing outside a car parked in the roadway. She heard a commotion and saw the individual standing outside walk down nearby stairs and return with something "long with a strap". She then heard a single shot fired.

¶7     Thereafter, Penn joined Samuel outside their home and Samuel noticed the cracked windshield and the hole in the frame of the truck, so she called the police to report the incident.[2] VIPD reported to the scene and Detective Thomas took Penn's statement describing the event. VIPD Crime Scene Technician, Debra Mahoney, also reported to the scene and took photographs of the location and the cracked windshield, which were admitted at trial.[3]

## LEGAL STANDARD

¶8     The relevant portions of V.I. R. CRIM. P. 29 read as follows:

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at

---

[2] A recording of Samuel's call to VIPD was admitted at trial as People's Exhibit L.
[3] *See* People's Exhibits H1, H2, H3, H4, I1, I2, I3, I4, I5, J1, J2, J3, and J4.

the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

(c) After Jury Verdict or Discharge.

(1) Time for a Motion. Unless otherwise extended by the court, a defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

(2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

(3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

¶9     The Virgin Islands Supreme Court has articulated clear standards for determining whether judgment of acquittal is appropriate following a jury's guilty verdict; such inquiry is also frequently referred to as a "sufficiency of the evidence" analysis. When reviewing a challenge to the sufficiency of evidence leading to a conviction, the standard of review is whether there is substantial evidence to support the jury's verdict when viewed in the light most favorable to the government. *Gumbs v. People*, 64 V.I. 491, 499 (V.I. 2016) (quoting *McIntosh v. People*, 57 V.I. 669, 678 (V.I. 2012)). Moreover, the court "must affirm a jury's verdict as long as substantial evidence was presented at trial to allow a rational trier of fact to convict when the evidence is viewed in a light most favorable to the People." *Id.* At 500 (quoting *James v. People*, 60 V.I. 311, 318 (V.I. 2013)).

¶10    A reviewing court "must be particularly deferential when determining whether a jury verdict rests on insufficient evidence," so as not to "usurp the role of the jury by re-weighing the evidence and re-assessing the credibility of witnesses." *Heyliger. People*, 66 V.I. 340, 348 (V.I. 2017) (quoting *Todman v. People*, 59 V.I. 675, 681 (V.I. 2015)). If any rational jury could find that the People proved, beyond a reasonable doubt, each element of the offense for which a defendant seeks acquittal, the conviction must be affirmed. *Mendoza v. Virgin Islands*, 55 V.I. 660, 667 (V.I. 2011). Only when the record contains no evidence from which a jury could find guilt beyond a reasonable doubt, regardless of how such evidence is weighed, may the court overturn a jury's verdict. *People v. Morton*, 57 V.I. 72, 76 (V.I. Super. Ct. 2012) (quoting *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1990)). If the People's evidence was insufficient, however, a guilty verdict will be vacated. *Heyliger*, 66 V.I. at 357 (citing *United States v. Dobbs*, 629 F.3d 1199, 1203 (10th Cir. 2011)).

## ANALYSIS

### I.    The People presented sufficient evidence for a jury to find Defendant guilty on Count One: Third-Degree Assault.

¶11    The Court orally denied Berthier's request for judgment of acquittal on Count One at trial, and Berthier now moves the Court to reconsider its ruling pursuant to V.I. R. CRIM. P. 29(c).

¶12    As relevant to the instant matter, the charge of third-degree assault is defined as "[w]hoever, under circumstances not amounting to an assault in the first or second degree . . . assaults another with a deadly weapon." 14 V.I.C § 297(a)(2). Accordingly, the elements which must be proven are (1) the defendant (2) committed an assault of the type specified, and (3) the assault did not rise to the level of first- or second-degree assault. *See Davis v. People*, 69 V.I. 619,

632 (V.I. 2018). Berthier argues his conviction on Count One must be vacated because there was insufficient evidence to identify Berthier as the assailant in this matter.[4]

¶13    Berthier argues Penn should not have been permitted to testify regarding Berthier's identity at trial, because the pretrial identification process failed to meet due process standards. He contends Penn obtained the details of Berthier's family, relationships, and other identifying information from other, unidentified persons, rendering Penn's testimony regarding Berthier's identity to be hearsay. The People respond the Court has already addressed Berthier's identification arguments on two occasions—having responded to both Berthier's motion to suppress identification evidence as well as Berthier's motion *in limine* to exclude identification testimony from Penn. The People further contend Penn testified to his prior personal knowledge of Berthier from visual familiarity, familial relationships, and personal recognition, and Samuel also testified to her visual familiarity with Berthier such that the evidence admitted is sufficient to enable identification of Berthier. Ultimately, the People argue, viewing the evidence in the light most favorable to the People, they introduced sufficient evidence to identify Berthier as Penn's assailant.

¶14    Despite the Court's pretrial rulings[5] regarding identification of Berthier, which favored the People, the People still had the burden at trial to prove all elements of the charges beyond a reasonable doubt. At trial, the People elicited testimony from Penn and Samuel regarding their familiarity with Berthier and his family. Penn and Samuel both testified they were visually familiar with Berthier. Penn testified he had spoken to Berthier many times and Berthier had even given him a ride once. Penn further testified he knew Berthier's uncle and mother and he had seen

---

[4] Berthier argues because identity is an essential element of all criminal charges, his argument for a judgment of acquittal of Count One also applies to Counts Two, Three, and Four.

[5] The Court first addressed Defendant's identification concerns in its memorandum opinion denying Berthier's motion to suppress, *People of the Virgin Islands v. Berthier*, 2022 VI Super 11U, entered January 27, 2022, and again in an Order denying Berthier's motion *in limine* to exclude Penn's identification testimony, entered on March 3, 2022.

Berthier around the uncle's Estate Frydenhoj residence for "years". Penn noted he knew which house Berthier frequented, he simply did not know whether Berthier's uncle lived in the upstairs or downstairs unit. Samuel testified she lived at the Estate Frydenhoj residence with Penn between May 2019 and February 2022, and she saw Berthier three or four times per week during that period, including seeing Berthier drive a gas truck around the neighborhood on multiple occasions. Samuel further testified she had seen Berthier on the scene of the incident on October 16, 2019. Immediately following the incident on October 16, 2019, Penn provided a description of his assailant to Detective Thomas as "red skin, slim, braids, and in his teens to early twenties," which was memorialized in Detective Thomas's initial report and admitted as evidence during trial.[6] Although Penn also told Detective Thomas he did not "know" Berthier, at the time of that initial report, Penn did say he knew Berthier's uncle and he was visually familiar with Berthier. At trial, Penn testified "I know him, there's no doubt in my mind. I did not know his name, but I know him." Further, Penn and Samuel both provided in-court identifications of Berthier during direct examination.

¶15    Berthier claims such evidence is insufficient to prove his identity as Penn's assailant beyond a reasonable doubt. The Court disagrees, finding a rational jury could determine that Penn and Samuel were personally familiar with Berthier and that the witnesses' identification of Berthier was valid. The Court finds the testimony admitted shows Penn and Samuel's personal familiarity with Berthier and his family, and accordingly it was not hearsay. It is not for this Court to reassess the credibility of these witnesses who proclaim their familiarity with Berthier, particularly when they were cross examined on such familiarity at trial.

---

[6] *See* Defendant's Exhibit D2.

¶16    Taking the evidence in the light most favorable to the People, the Court finds the People presented sufficient evidence for a rational jury to identify Berthier as Penn's assailant, beyond a reasonable doubt. As a result, the Court has no basis to void the jury's verdict on this charge. Accordingly, the jury's verdict on Count One, third-degree assault, will stand, and the Court will deny Berthier's motion with respect to Count One.[7]

## II.    The People did not present sufficient evidence for a jury to find Berthier guilty on Count Two: Unauthorized Possession of a Firearm During a Crime of Violence.

¶17    At trial, Berthier orally requested a judgment of acquittal on Count Two, claiming the People did not prove Berthier lacked a license to possess a firearm on October 16, 2019. The Court reserved ruling on Berthier's oral request for judgment of acquittal on that charge, both at the conclusion of the People's case in chief and at the close of evidence.

¶18    Section 2253(a) of title 14 of the Virgin Islands Code provides the standard required to prove unauthorized possession of a firearm during a crime of violence. The section states, in pertinent part:

> Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(f) of this code, loaded or unloaded, may be arrested without a warrant . . . or if such firearm or an imitation thereof was had, possessed, borne, transported or carried by or under the proximate control of such person during the commission or attempted commission of a crime of violence, as defined in subsection (d) hereof . . .

The Territorial Court of the Virgin Islands held the elements of 14 V.I.C. § 2253(a) to be "that the defendant: (1) without authority of law; (2) possessed; (3) a firearm; (4) openly or concealed, on

---

[7] As a result of this ruling on identity, the portion of the Defendant's motion moving for acquittal on all charges due to insufficient identification must also fail.

or about his person, and loaded or unloaded." *Gov't of the Virgin Islands v. Smalls*, 32 V.I. 175, 178 (V.I. Super. Ct. 1995). In the intervening years, no majority opinion from the Virgin Islands Supreme Court has interpreted this section of the Code, but multiple concurring opinions[8] have stated that the elements of 14 V.I.C § 2253(a) "require proof beyond a reasonable doubt of: (1) the defendant; (2) the firearm; (3) possession of the firearm by the defendant; (4) knowledge of the firearm by the defendant; and (5) lack of lawful authorization for the defendant to possess the firearm." *Ponce v. People*, 2020 VI 2, at ¶ 149 (Swan, J. concurring in part and dissenting in part); *see also Davis*, 69 V.I. at 665 (Swan, J. concurring in part and dissenting in part) (stating the elements which must be proven under 14 V.I.C. § 2253(a) are "(1) the defendant; (2) knowingly possessed; (3) a firearm; (4) without lawful authorization; (5) under one of the five aggravating circumstances").

### A. The People introduced no evidence that Berthier lacked a firearms license at the time of the incident.

¶19    The only disputed element of Count Two (unauthorized possession of a firearm during a crime of violence) is "without lawful authorization", which requires the People prove beyond a reasonable doubt the Defendant was not licensed to carry a firearm in the territory of the Virgin Islands at the time of the incident. *Tyson v. People*, 59 V.I. 539, 550 (V.I. 2013) (citing *Ambrose v. People*, 56 V.I. 99, 106–08 (V.I. 2012)).

---

[8] The Court notes that the elemental breakdown of 14 V.I.C. § 2253(a) was not addressed within the majority opinion in *Ponce v. People* or *Davis v. People* because the construction of that specific statute was not at issue within those matters. However, Justice Swan's partial concurrences and partial dissents on each respective opinion delve into the elemental structure of the provision to provide additional context and background for his concurrence/dissent. Notably, the discussions of the elements within these opinions were included within the concurring, rather than dissenting portions of the opinions.

¶20    Berthier argues that although the People called VIPD Lieutenant Gonzalez to testify regarding a search of firearms records for Berthier, no evidence was ultimately admitted regarding Berthier's firearm licensure status. Moreover, Berthier contends there was no evidence to show he lacked authorization to possess a firearm. The People counter that for the element "without lawful authorization", the burden of proof shifts to the defendant as an affirmative defense, rather than being an essential element for the People to prove, citing to Justice Swan's partial concurrence and partial dissent in *Davis v. People.*[9] The Court rejects this argument as even Justice Swan says, for purposes of the *Davis* opinion, "without lawful authorization" is an element of the crime that must be proven by the People. *Davis,* 69 V.I. at 663, n.34. Although the People attempted to introduce testimony that Berthier did not have a license to carry a firearm at trial, the Court found all the proffered evidence to be inadmissible pursuant to the rules of evidence.[10] Therefore, no evidence was admitted regarding Berthier's licensure status or authorization to possess a firearm.

### B.  There was insufficient evidence for a jury to determine beyond a reasonable doubt that Berthier was under 21 years of age at the time of the incident.

¶21    As stated, there was no evidence admitted regarding Berthier's actual firearm licensure status. In fact, the only evidence of Berthier's possible status of firearm licensure is brief testimony

---

[9] Within his partial concurrence and partial dissent in *Davis*, Justice Swan noted that it is an "open question" whether "without lawful authorization" is an element rather than an affirmative defense. *Davis,* 69 V.I. at 663, n.34. Nevertheless, Justice Swan stated "for purposes of this opinion we include in the statement of elements the language 'unless authorized by law.'" *Id.* He "reserve[d] further consideration on the question of whether the statutory language read in *pari materia* supports the conclusion that this language is an element of the crime rather than an affirmative defense." *Id.* In *Ponce*, the Virgin Islands Supreme Court also left the status of the element, "unless otherwise authorized by law", as an "open question", again noting that for the purposes of the instant opinion, the Supreme Court would include it as a required element for the charge. *Ponce,* 2020 VI 2, at ¶ 149, n.30. Thus, because the Virgin Islands Supreme Court has thus far treated "without lawful authorization" as an element, this Court follows that interpretation of §2253(a).

[10] VIPD Lieutenant Gonzalez testified that he searched firearm records to determine if Berthier possessed a firearm license on October 19, 2019, instead of the actual date of the alleged incident, October 16, 2019. As a result, the majority of Lieutenant Gonzalez's testimony was stricken from the record.

from VIPD Lieutenant Gonzalez, stating a person must be at least 21 years of age to legally possess a firearm in the Virgin Islands.[11]

¶22     Berthier argues the jury did not have sufficient evidence to find he was too young to obtain a license to carry a firearm, and as a result the People failed to prove a required element of the crime beyond a reasonable doubt. The People respond there was sufficient circumstantial evidence for a jury to infer Berthier was under 21 years of age at the time of the alleged incident, so he was not old enough to obtain a license for a firearm. Specifically, the People point to Detective Thomas's investigation and her testimony that Berthier attended Eudora Kean High School, the case was turned over from the Juvenile Bureau to the Criminal Investigation Bureau, as well as Penn's testimony he had seen Berthier in a Eudora Kean High School uniform.

¶23     The Court finds there was insufficient evidence to determine Berthier's age at the time of the incident. Although there were several mentions of Berthier's attendance at Eudora Kean High School, there was no testimony regarding the timeframe in which he attended that school or whether he was attending the school at the time of the incident. Even if Berthier was attending the school at the time of the incident, the evidence offered no certainty that he was under 21 years of age during his period of attendance or on October 16, 2019. Detective Thomas did testify she viewed Berthier's driver's license and he was not a minor on October 16, 2019, and by the time of

---

[11] In Berthier's reply to his motion for judgment of acquittal, Berthier makes an argument that there is no provision in the Virgin Islands Code indicating a person must be at least 21 years of age to obtain a license to carry a firearm other than a handgun. He points out the Virgin Islands Code only includes an age provision for carrying a concealed handgun. *See* 23 V.I.C. § 454(a) (stating "[t]o obtain a license to carry a concealed handgun on 24-hour basis, the applicant must be at least 21 years of age . . ."). However, Berthier did not raise this argument in his motion for judgment of acquittal, he only raised it in his reply. Therefore, the argument was waived. *See Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 528 n.4 (V.I. 2013) ("Like an issue raised for the first time in an appellate reply brief, an issue raised for the first time in a reply brief supporting summary judgment is deemed waived because the opposing party typically does not have the opportunity to respond"); *Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 567-568 (V.I. 2012) (deeming an argument solely raised within a party's reply brief to be waived).

the trial he was "approximately 21" years of age. But that testimony is not sufficient to establish he was less than 21 years of age on October 16, 2019. A rational jury could not find beyond a reasonable doubt that Berthier was less than 21 years of age just because he was more than 18 years of age. Although the People attempted to introduce evidence of Berthier's date of birth, they were unsuccessful. Therefore, no specific evidence was admitted regarding Berthier's age at the time of the incident, and the circumstantial evidence is too vague for a rational jury to conclude beyond a reasonable doubt that Berthier lacked lawful authorization to possess a firearm.

¶24    The Court therefore finds the People failed to introduce sufficient evidence to prove Berthier lacked a firearm license on October 16, 2019, or he was not of proper age to obtain and possess such licensure. Accordingly, even viewing the evidence in the light most favorable to the People, the Court finds the People did not prove all elements of Count Two beyond a reasonable doubt. Thus, the Court will vacate Berthier's conviction on Count Two, unauthorized possession of a firearm during a crime of violence, and acquit him of that charge.

### III.    The People did not present sufficient evidence for a jury to find Berthier guilty on Count Three: Reckless Endangerment in the First Degree.

¶25    At the conclusion of the People's case in chief and after the close of evidence, the Court reserved ruling on Berthier's oral request for judgment of acquittal on Count Three. In his renewed motion, Berthier reiterates his argument from trial that the People failed to prove the alleged incident occurred in a "public place."

¶26    To obtain a conviction on a charge of first-degree reckless endangerment, the People must prove the defendant "(1) recklessly engaged in conduct (2) in a public place that (3) created a grave risk of death to another person (4) under circumstances evidencing a depraved indifference to

human life." *Davis*, 69 V.I. at 635 (citing 14 V.I.C. § 625; *Woodrup v. People*, 63 V.I. 696, 711 (V.I. 2015)).

¶27    Of the four elements of the crime of first-degree reckless endangerment, Defendant argues only that the People did not introduce sufficient evidence to prove the incident occurred in a "public place". A "public place" is defined as "a place to which the general public has a right to resort; but a place which is in point of fact public rather than private, and visited by many persons and usually accessible to the public." *Davis*, 69 V.I. at 635 (citing 14 V.I.C. § 625(c)(2); *Estick v. People*, 62 V.I. 604, 615 (V.I. 2015)). To prove a location is public, it must have been "used by the public in general rather than only the residences next to the area." *Id.* at 637 (quoting *Christian v. State*, 897 N.E.2d 503, 505 (Ind. Ct. App. 2008) (applying a definition of "public place" similar to 14 V.I.C. § 625)).

¶28    In the *Davis* opinion, the Virgin Islands Supreme Court extensively analyzed whether the location at issue was in fact "public" under the statutory definition. The *Davis* court interpreted witness testimony and evidence as to the location of a shooting to locate the incident "near a tree, which appears to be located on privately owned property on or adjacent to a privately owned gut and/or a privately owned dirt road." *Davis*, 69 V.I. at 636. Ultimately, because there was no testimony regarding the level of "public access" to the location under the tree, and the location appeared to be located on private land in a largely residential area, the *Davis* court determined the People failed to show the shooting occurred in a "public place" and vacated the conviction on the reckless endangerment charge. *Id.* at 636-37. On the other hand, the Virgin Islands Supreme Court deemed a place to be "public" when a "shooting between [a suspect] and three officers occurred on a street, directly in front of and around [a] restaurant and [a] mini mart . . . [and] several

individuals [were] operating a fruit stand in close proximity to the mini mart." *Augustine v. Virgin Islands*, 55 V.I. 678, 689-90 (V.I. 2011).

¶29 Berthier claims the instant incident occurred in the same vicinity as the incident in the *Davis* case, and he claims the People failed to show the area of the incident was "in point of fact public," beyond a reasonable doubt. Berthier contends this Court is bound to follow *Davis* under the doctrine of *stare decisis*.[12] Berthier further argues there were no persons other than Penn present on the scene at the time of the incident, (thus not comporting with the requirement that the shooting occur in a public place). The People counter *Davis* is distinguishable from the instant matter because the *Davis* incident took place under a tree on private property—a location the public has no right to be—whereas the instant incident occurred on the Estate Frydenhoj roadway, a

---

[12] Berthier argues because the doctrine of *stare decisis* has not been formally adopted in the Virgin Islands, that the assessment and adoption of the doctrine requires a *Banks* analysis. However, in *Banks v. International Rental and Leasing Corporation*, the Virgin Islands Supreme Court actually discussed *stare decisis*. In dicta, the Virgin Islands Supreme Court stated the following:

> *Stare decisis* "is not an inexorable command." *McDonald v. City of Chicago*, 561 U.S. 742, 812 (2010) (Thomas, J., concurring) (quoting *Lawrence v. Texas*, 539 U.S. 558, 577 (2003)). Indeed, as the Supreme Court of the United States has made clear, "[s]*tare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (citing *Vasquez v. Hillery*, 474 U.S. 254, 265–266 (1986)). "Nevertheless, when governing decisions are unworkable or are badly reasoned," the Court "has never felt constrained to follow precedent." *Id.* (quoting *Smith v. Allwright*, 321 U.S. 649, 665 (1944)). This is so because *stare decisis* is "a principle of policy and not a mechanical formula of adherence ... however ... questionable, when such adherence involves collision with a ... doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering v. Hallock*, 309 U.S. 106, 119 (1940). We agree . . .

*Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 985 n.10 (V.I. 2010). Numerous other cases have discussed and utilized the doctrine of *stare decisis* within their decisions as well. *See, e.g., Garcia v. Garcia*, 59 V.I. 758, 776 (V.I. 2013); *In re Temp. Care of R.F.*, 47 V.I. 178, 189 (V.I. Super. Ct. 2005) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)); *People of the Virgin Islands v. Simmonds*, 48 V.I. 320, 333-34 n.7 (V.I. Super. Ct. 2007). Although not explicitly adopted within the territory, the Court finds no need to engage in a *Banks* analysis for the doctrine of *stare decisis*. *Stare decisis* is a well-developed and well-understood legal concept which Virgin Islands courts have already been following when necessary. American jurisprudence requires the lower courts to follow findings and holdings of the higher courts, and thus this Court is bound by the precedent of the Virgin Islands Supreme Court. Accordingly, it is unnecessary to perform a *Banks* analysis, and the Court will follow the Virgin Island Supreme Court's findings in *Davis* to the extent necessary to resolve the instant matter.

public throughway where the public may freely access. The People further note the vehicle that was blocking Penn's path was able to drive through the neighborhood and down the road. The People claim the statute does not require persons were actually *present* for the incident, just that members of the public *could* access the location.

¶30     Pursuant to the standard articulated in *Davis*, the Court finds the People have failed to meet the burden of proving the Estate Frydenhoj roadway where a firearm was discharged at Penn meets the definition of a "public place", beyond a reasonable doubt. As found in *Davis*, a public place requires general access to the public, rather than merely to residences nearby, so although the public can access the Estate Frydenhoj roadway, it is a residential area utilized by those who live along that neighborhood roadway and their visitors. *See Davis*, 69 V.I. at 637. Samuel testified the road leads to "the gut" and to "the bridge", and in the opposite direction it leads to the "main road" and the Frydenhoj ballfield or ballpark. However, Samuel said it is not a dead-end road. Penn referred to it as an "unpaved, neighborhood road". The photographs admitted at trial further display the road was unpaved and very narrow, with residences on both sides.[13] There was no further evidence regarding the nature of the road or its location. Further, the Court is not swayed by the People's argument that the vehicle blocking Penn's way forward was able to drive down the roadway as evidence the area is a public place because the presence of a vehicle does not automatically deem an area a "public place" and the People introduced no evidence regarding the identity of the individuals or the vehicle or their purpose for being in that location.

¶31     The Court finds the evidence was not sufficient for a rational jury to draw a conclusion that the road is used by the public in general rather than only the residences next to the area, as is the

---

[13] *See* People's Exhibits H1, H2, H3, J1, J2, J3, and J4, which display the roadway, Penn's home, and the stairwell Penn and Samuel testified Berthier descended to retrieve the firearm, and some of the surrounding residences.

standard established in *Davis*. Accordingly, the Court finds the People failed to carry the burden of proving the incident occurred in a "public place", beyond a reasonable doubt. Therefore, the People did not introduce sufficient evidence to establish all requisite elements beyond a reasonable doubt for Count Three, reckless endangerment in the first degree, and will acquit Berthier of that charge and vacate the conviction.

**IV.     The People did not present sufficient evidence for a jury to find Berthier guilty on Count Four: Unauthorized Possession of Firearm Ammunition.**

¶32     At trial, the Court denied Berthier's oral request for judgment of acquittal on Count Four, and the jury found him guilty of unauthorized possession of firearm ammunition pursuant to the relevant statute and jury instructions. Berthier now requests this Court reconsider its oral ruling, pursuant to V.I. R. CRIM. P. 29(c).

¶33     The People charged Berthier with unauthorized possession of firearm ammunition under the pertinent section of the Virgin Islands Code, which states,

> a person who is not (1) a licensed firearms or ammunition dealer; or (2) officer, agent or employee of the Virgin Islands or the United States, on duty and acting within the scope of his duties; or (3) holder of a valid firearms license for the same firearm gauge or caliber ammunition of the firearm indicated on such license; and (4) who possesses, sells, purchases, manufactures, advertises for sale, or uses any firearm ammunition is guilty subject to imprisonment . . . or a fine . . . .

14 V.I.C. § 2256(a). "Firearm ammunition" is defined as "any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable for use in a firearm." 14 V.I.C. § 2256(c)(2).

¶34     At trial, the Court instructed the jury that to establish guilt on Count Four, they must find: (1) the Defendant possessed and used firearm ammunition; (2) the Defendant was not at the time the holder of a valid firearms license for the firearm gauge or caliber ammunition of the firearm

used on October 16, 2019; and (3) this conduct occurred on or about October 16, 2019, on St.

Thomas, Virgin Islands.[14]

### A. The item shot from the firearm met the definition of "firearm ammunition".

¶35    Berthier argues it was improper for the Court to deny Berthier's oral motion at trial

pursuant to a broader definition of "ammunition" found in 23 V.I.C. § 451(a), rather than the

definition of "firearm ammunition" within 14 V.I.C. § 2256, because the elements of a crime must

be derived from the charging statute.[15] Accordingly, Berthier argues the People failed to prove the

item that damaged Penn's truck met the definition of "firearm ammunition" in 14 V.I.C. §

2256(c)(2). The People counter 23 V.I.C. §§ 451 through 488 and 14 V.I.C. §§ 2251 through

2255[16] deal with the same subject matter and refer to each other, so they are in *pari materia* and

must be read together, in a harmonious manner.

¶36    The Court agrees with Berthier that it mistakenly applied the broader definition of

"ammunition" from 23 V.I.C. § 451(a), rather than the applicable definition of "firearm

ammunition" from 14 V.I.C. §2256(c)(2). As Berthier points out, it is inappropriate for the Court

to rely upon a broader definition when a more narrowly tailored one is available. It is a well-

---

[14] While discussing the jury instructions, the parties considered several provisions within 14 V.I.C. § 2256(a), and whether they should be considered affirmative defenses the Defendant must prove to negate the charge, or elements the People must prove in order to convict—specifically that the defendant was not an "officer, agent or employee of the Virgin Islands or the United States, on duty and acting within the scope of his duties or the holder of a valid firearms license for the same firearm gauge or caliber ammunition of the firearm indicated on such license." The Court did not include the disputed provisions in its instructions to the jury as required elements of Count Four. In his reply, Berthier cites to a Virgin Islands Supreme Court case interpreting 14 V.I.C. § 2256(a), which was decided after Berthier's trial. Berthier includes an excerpt from the case, which seems to find that the disputed provisions *should* be considered elements rather than affirmative defenses. *Roberts v. People*, 2022 VI 10, ¶ 39. However, whether those provisions are elements or affirmative defenses is not relevant here as Berthier only argues that he is entitled to judgment of acquittal because the People did not prove that he lacked a firearm license.

[15] The definition of "ammunition" within 23 V.I.C. § 451(a) is "any bullet, cartridge, projectile, buckshot, or any load placed or which may be placed in a firearm to be discharged," whereas 14 V.I.C. § 2256(c)(2) defines "firearm ammunition" as "any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable for use in a firearm."

[16] The Court notes that the People were likely intending to refer to 14 V.I.C. §§ 2251 through 2258a, so as to include the provision at issue, 14 V.I.C. § 2256.

established canon of statutory construction that "when two statutes cover the same situation, the more specific statute takes precedence over the more general one, unless it appears that the legislature intended for the more general to control." *Smith v. Henley*, 67 V.I. 965, 971 (2017) (quoting *V.I. Public Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 485 (V.I. 2008)). In this instance, the sentencing statute, 14 V.I.C. § 2256, is the more specific statute, providing a definition for "firearm ammunition" while 23 V.I.C. § 451 provides a definition only for "ammunition". Additionally, when crafting jury instructions, the parties utilized and adapted the definition from 14 V.I.C. § 2256 to define the elements required to convict on Count Four. Accordingly, the Court will apply the definition of "firearm ammunition" from 14 V.I.C. § 2256(c)(2) for assessment of this matter.

¶37     As stated, the pertinent definition of "firearm ammunition" is "any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable for use in a firearm." 14 V.I.C. § 2256(c)(2). Berthier contends Penn and Samuel's testimony where they describe the item that damaged Penn's truck as a "bullet" is insufficient to satisfy the definition of firearm ammunition because neither Penn nor Samuel testified that they saw the object emitted from the firearm nor did they demonstrate they have the appropriate lay knowledge to testify regarding firearms, ammunition, or ballistics. Accordingly, Berthier argues expert testimony was required to identify the item which damaged Penn's car, citing to a Kentucky Court of Appeals case.[17] The People counter they presented sufficient evidence, via Penn and Samuel's testimony, to prove Berthier raised a gun and fired a shot at Penn. The People additionally argue their introduction of evidence of the damage to Penn's vehicle where the item hit the windshield was

---

[17] *Ellis v. Commonwealth*, No. 2007-CA-002213-MR, 2009 WL 413994, at *2 (Ky. Ct. App. Feb 20, 2009).

sufficient for the jury to conclude Berthier possessed firearm ammunition. They argue an expert was not required to assess the item and review the ballistics in this matter because the definition of ammunition within 23 V.I.C. § 451(a) was broad enough to include numerous projectiles which could have hit Penn's truck.

¶38    Throughout her testimony, Samuel repeatedly stated she heard a shot, saw a gun shot or bullet hole (referenced interchangeably throughout Samuel's testimony) in the frame of Penn's truck, and she saw Defendant holding a "long object with a barrel" and a strap. Penn, too, testified the Defendant "had a gun in his hand" and ultimately the Defendant "shot at [Penn] from four (4) or five (5) feet away". Penn stated there was a bullet hole in the frame of his truck and there was a crack in the windshield from the bullet. Given the significant testimony that Berthier utilized a firearm of some kind, there was damage to Penn's truck as a result of a projectile coming out of such firearm, and both Penn and Samuel witnessed the shot either visually or audially, the Court finds there is sufficient evidence for a jury to conclude the item which damaged Penn's truck satisfies the definition of "firearm ammunition". The Court finds an expert witness was not required to testify to the status of the projectile, since it is apparent from the circumstances of the case that something was shot from a firearm, which a rational jury can understand without expert testimony.

¶39    Accordingly, the Court finds the People did carry their burden of proving the item which damaged Penn's truck was in fact "firearm ammunition". Penn and Samuel's testimony that an item shot from a firearm and struck Penn's truck provided sufficient basis for a jury to determine the item which damaged Penn's truck was "designed or adapted for use in a firearm", thereby meeting the appropriate definition for "firearm ammunition".

**B. The People failed to prove a required element of Count Four beyond a reasonable doubt.**

¶40    As stated, to find Berthier guilty of the charge of unlawful possession of firearm ammunition, the People had the burden of proving that (1) Berthier possessed and used firearm ammunition, (2) Berthier was not at that time the holder of a valid firearms license for the firearm gauge or caliber ammunition of the firearm used on October 16, 2019; and (3) this conduct occurred on or about October 16, 2019, on St. Thomas, Virgin Islands.

¶41    Berthier argues the People did not prove he "was not the holder of a valid firearms license for the same firearm gauge or caliber ammunition of the firearm indicated on such license", and thus the guilty verdict cannot stand. As discussed in detail in section II, above, the People indeed failed to prove Berthier lacked licensure to possess a firearm on October 16, 2019. Therefore, the People failed to prove an essential element of the crime of unauthorized possession of firearm ammunition.

¶42    Despite the above finding that the People presented sufficient evidence for a jury to find the item that was discharged from Berthier's firearm was firearm ammunition, the Court still finds the People failed to carry their burden of proving every required element of Count Four. Accordingly, the Court will reverse its original ruling denying Berthier's request for judgment of acquittal on Count Four and vacate the jury's finding of guilt. Thus, the Court will acquit Berthier for Count Four, unauthorized possession of firearm ammunition.

## CONCLUSION

¶43    The Court will grant Berthier's motion for judgment of acquittal in part and deny it in part. The Court finds the People introduced sufficient evidence to prove Berthier's identity as Penn's assailant, and therefore will deny Berthier's motion as to Count One. However, the Court finds the

*People of the Virgin Islands v. Shekil Berthier*
Case No. ST-2020-CR-00003
Memorandum Opinion
Page 21 of 21                                                                    Cite as 2022 VI Super 68U

People failed to introduce adequate evidence to prove at least one required element for each Count

Two, Count Three, and Count Four. Accordingly, the Court will grant Berthier's motion with

respect to Counts Two, Three, and Four and will vacate the jury's guilty verdicts for those counts.

¶44     An order consistent herewith will immediately follow.


DATED:   July 26, 2022

                                                    _____
                                                         **Kathleen Mackay**
                                                    Judge of the Superior Court
**ATTEST:**                                         of the Virgin Islands
**TAMARA CHARLES**
Clerk of the Court

BY:   _____
      **LATOYA CAMACHO**
      Court Clerk Supervisor 07/26/22

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**

July 26, 2022 12:23 PM
ST-2020-CR-00003
**TAMARA CHARLES
CLERK OF THE COURT**



## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | **CASE NO. ST-2020-CR-00003** |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 14 V.I.C. § 297(a)(2) |
| | ) | 14 V.I.C. § 2253(a) |
| **SHEKIL JAMAC BERTHIER** | ) | 14 V.I.C. § 625(a) |
| | ) | 14 V.I.C. § 2256(a) |
| Defendant. | ) | |
| | ) | |

## ORDER

In accordance with the Memorandum Opinion issued on this day, it is hereby

**ORDERED** that Defendant Shekil Berthier's Motion for Judgment of Acquittal is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that the portion of the Motion seeking a judgment of acquittal on Count One is **DENIED**; it is further

**ORDERED** that the portion of the Motion seeking judgments of acquittal on **Counts Two, Three, and Four** is **GRANTED**; it is further

**ORDERED** that Defendant is acquitted of Counts Two, Three and Four; it is further

**ORDERED** that the Office of Probation shall amend its Presentence Report in accordance with this Order and the corresponding Memorandum Opinion; it is further

**ORDERED** that this matter remains scheduled for Sentencing, on Count One, on **Thursday, August 11, 2022, at 10:00 a.m. IN PERSON**; and it is finally

**ORDERED** that copies of this Order and the corresponding Memorandum Opinion shall be served on Defendant Shekil Berthier and copies shall be directed to counsel of record and the Probation Office.

DATED: July 26, 2022

                                                        **Kathleen Mackay**
                                      Judge of the Superior Court
                                        of the Virgin Islands

**ATTEST:**
**TAMARA CHARLES**
Clerk of the Court

**BY:** _____
   for **LATOYA CAMACHO**
     Court Clerk Supervisor 07 / 26 / 22